# BEECHAM *v.* UNITED STATES

No. 93–445.   Argued March 21, 1994—Decided May 16, 1994*

---

*Together with *Jones* v. *United States,* also on certiorari to the same court (see this Court's Rule 12.2).

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Nathan Lewin* argued the cause for petitioners. With him on the briefs were *Mathew S. Nosanchuk* and *R. Russell Stobbs.*

*Edward C. DuMont* argued the cause for the United States. With him on the brief were *Solicitor General Days, Assistant Attorney General Harris, Deputy Solicitor General Bryson,* and *John F. De Pue.*

JUSTICE O'CONNOR delivered the opinion of the Court.

Today we construe three provisions of the federal firearms statutes:

> "It shall be unlawful for any person who has been convicted . . . [of] a crime punishable by imprisonment for a term exceeding one year . . . [to possess] any firearm . . . ." 18 U. S. C. § 922(g).
>
> "What constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." § 921(a)(20) (the choice-of-law clause).
>
> "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction . . . ." *Ibid.* (the exemption clause).

The question before us is which jurisdiction's law is to be considered in determining whether a felon "has had civil rights restored" for a prior federal conviction.

## I

Each of the petitioners was convicted of violating § 922(g). Beecham was convicted in Federal District Court in North Carolina, Jones in Federal District Court in West Virginia. Beecham's relevant prior conviction was a 1979 federal conviction in Tennessee, for violating 18 U. S. C. § 922(h). App. 11. Jones' prior convictions were two West Virginia state convictions, for breaking and entering and for forgery, and one 1971 federal conviction in Ohio for interstate transportation of a stolen automobile. *Id.*, at 19–20.

Jones had gotten his civil rights restored by West Virginia, so his two West Virginia state convictions were not considered. Beecham claimed his civil rights had been restored by Tennessee, the State in which he had been convicted of his federal offense. The question presented to the District Courts was whether these restorations of civil rights by *States* could remove the disabilities imposed as a result of Beecham's and Jones' *federal* convictions.

In both cases, the District Courts concluded the answer was "yes," though for different reasons: In Beecham's case the court looked to the law of the State in which the earlier federal crime was committed (Tennessee); in Jones' case the court looked to the law of the State in which Jones lived when he committed the § 922(g) offense (West Virginia). The Fourth Circuit reversed both rulings, reasoning that state restoration of civil rights could not undo the federal disability flowing from a federal conviction. See 993 F. 2d 1131 (1993) (Jones' case) and 993 F. 2d 1539 (1993) (judgt. order in Beecham's case). We granted certiorari to resolve the conflict this decision created with *United States* v. *Edwards*, 946 F. 2d 1347 (CA8 1991), and *United States* v. *Geyler*, 932 F. 2d 1330 (CA9 1991). 510 U. S. 975 (1993).

## II

The question in these cases is how the choice-of-law clause and the exemption clause of § 921(a)(20) are related. If, as

the Fourth Circuit held, the choice-of-law clause applies to the exemption clause, then we must look to whether Beecham's and Jones' civil rights were restored under federal law (the law of the jurisdiction in which the earlier proceedings were held). On the other hand, if, as the Eighth and Ninth Circuits concluded, the two clauses ought to be read separately, see *Geyler, supra,* at 1334–1335; *Edwards, supra,* at 1349–1350, then we would have to come up with a special choice-of-law principle for the exemption clause.

We think the Fourth Circuit's reading is the better one. Throughout the statutory scheme, the inquiry is: Does the person have a qualifying conviction on his record? Section 922(g) imposes a disability on people who "ha[ve] been convicted." The choice-of-law clause defines the rule for determining "[w]hat constitutes a conviction." The exemption clause says that a conviction for which a person has had civil rights restored "shall not be considered a conviction." Asking whether a person has had civil rights restored is thus just one step in determining whether something should "be considered a conviction." By the terms of the choice-of-law clause, this determination is governed by the law of the convicting jurisdiction.

This interpretation is supported by the fact that the other three procedures listed in the exemption clause—pardons, expungements, and set-asides—are either always or almost always (depending on whether one considers a federal grant of habeas corpus to be a "set-aside," a question we do not now decide) done by the jurisdiction of conviction. That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well. *Dole* v. *Steelworkers,* 494 U. S. 26, 36 (1990); *Third Nat. Bank in Nashville* v. *Impac Limited, Inc.,* 432 U. S. 312, 322 (1977); *Jarecki* v. *G. D. Searle & Co.,* 367 U. S. 303, 307 (1961). Though this canon of construction is by no means a hard and fast rule, it is a factor pointing toward the Fourth Circuit's construction of the statute.

In light of the statutory structure, the fact that both clauses speak of "conviction[s]" rebuts the Eighth and Ninth Circuits' argument that the two clauses "pertain to two entirely different sets of circumstances"—"the question of what constitutes a conviction" and "the effect of postconviction events." *Geyler, supra,* at 1334–1335; see also *Edwards, supra,* at 1349. The exemption clause does not simply say that a person whose civil rights have been restored is exempted from § 922(g)'s firearms disqualification. It says that the person's conviction "shall not be considered a conviction." The effect of postconviction events is therefore, under the statutory scheme, just one element of the question of what constitutes a conviction.

Likewise, the presence of the choice-of-law clause rebuts the Eighth and Ninth Circuits' argument that the "plain, unlimited language," *Edwards, supra,* at 1349; see also *Geyler, supra,* at 1334, of the exemption clause—with its reference to *"[a]ny conviction . . .* for which a person has . . . had civil rights restored" (emphasis added)—refers to all civil rights restorations, even those by a jurisdiction other than the one in which the conviction was entered. Regardless of what the quoted phrase might mean standing alone, in conjunction with the choice-of-law clause it must refer only to restorations of civil rights by the convicting jurisdiction. The plain meaning that we seek to discern is the plain meaning of the whole statute, not of isolated sentences. See *King* v. *St. Vincent's Hospital,* 502 U. S. 215, 221 (1991); *Massachusetts* v. *Morash,* 490 U. S. 107, 115 (1989); *Shell Oil Co.* v. *Iowa Dept. of Revenue,* 488 U. S. 19, 26 (1988).

We are also unpersuaded by the Ninth Circuit's argument that "[b]ecause there is no federal procedure for restoring civil rights to a federal felon, Congress could not have expected that the federal government would perform this function," and that therefore "[t]he reference in § 921(a)(20) to the restoration of civil rights must be to the state procedure."

*Geyler*, 932 F. 2d, at 1333.\* This reasoning assumes that Congress intended felons convicted by all jurisdictions to have access to all the procedures (pardon, expungement, set-aside, and civil rights restoration) specified in the exemption clause; but nothing in § 921(a)(20) supports the assumption on which this reasoning is based. Many jurisdictions have no procedure for restoring civil rights. See Apps. A and B to Brief for Petitioners (indicating that at least 11 States—Arkansas, Indiana, Kentucky, Maryland, Missouri, New Jersey, Oklahoma, Pennsylvania, Texas, Vermont, and Virginia suspend felons' civil rights but provide no procedure for restoring them); see, *e. g.*, Mo. Rev. Stat. § 561.026 (1979 and Supp. 1994); *United States* v. *Thomas*, 991 F. 2d 206, 213–214 (CA5) (Texas law), cert. denied, 510 U. S. 1014 (1993). However one reads the statutory scheme—as looking to the law of the convicting jurisdiction, or to the law of the State in which the prior conduct took place, or to the law of the State in which the felon now lives or has at one time lived—people in some jurisdictions would have options open to them that people in other jurisdictions may lack. Under our reading of the statute, a person convicted in federal court is no worse off than a person convicted in a court of a State that does not restore civil rights.

---

\*We express no opinion on whether a federal felon cannot have his civil rights restored under federal law. This is a complicated question, one which involves the interpretation of the federal law relating to federal civil rights, see U. S. Const., Art. I, § 2, cl. 1 (right to vote for Representatives); U. S. Const., Amdt. XVII (right to vote for Senators); 28 U. S. C. § 1865 (right to serve on a jury); consideration of the possible relevance of 18 U. S. C. § 925(c) (1988 ed., Supp. IV), which allows the Secretary of the Treasury to grant relief from the disability imposed by § 922(g); and the determination whether civil rights must be restored by an affirmative act of a Government official, see *United States* v. *Ramos*, 961 F. 2d 1003, 1008 (CA1), cert. denied, 506 U. S. 934 (1992), or whether they may be restored automatically by operation of law, see *United States* v. *Hall*, 20 F. 3d 1066 (CA10 1994). We do not address these matters today.

Because the statutory language is unambiguous, the rule of lenity, which petitioners urge us to employ here, is inapplicable. See *Chapman* v. *United States,* 500 U. S. 453, 463–464 (1991). Of course, by denying the existence of an ambiguity, we do not claim to be perfectly certain that we have divined Congress' intentions as to this particular situation. It is possible that the phrases on which our reading of the statute turns—"[w]hat constitutes a conviction" and "shall not be considered a conviction"—were accidents of statutory drafting; it is possible that some legislators thought the two sentences of § 921(a)(20) should be read separately, or, more likely, that they never considered the matter at all. And we recognize that in enacting the choice-of-law clause, legislators may have been simply responding to our decision in *Dickerson* v. *New Banner Institute, Inc.,* 460 U. S. 103 (1983), which held that federal law rather than state law controls the definition of what constitutes a conviction, not setting forth a choice-of-law principle for the restoration of civil rights following a conviction.

But our task is not the hopeless one of ascertaining what the legislators who passed the law would have decided had they reconvened to consider petitioners' particular cases. Rather, it is to determine whether the language the legislators actually enacted has a plain, unambiguous meaning. In this instance, we believe it does.

### III

We therefore conclude that petitioners can take advantage of § 921(a)(20) only if they have had their civil rights restored under federal law, and accordingly affirm the judgment of the Court of Appeals.

*So ordered.*