**UNITED STATES of America**

v.

**Dale J. JULIAN, Defendant.**

**No. 4:CR–97–0078.**

United States District Court,
M.D. Pennsylvania.

Aug. 13, 1997.

Malachy E. Mannion, Asst. U.S. Atty., Scranton, PA, for U.S.

Peter T. Campana, Campana, Campana & Lovecchio, LLP, Williamsport, PA, for Defendant.

### MEMORANDUM

McCLURE, District Judge.

#### BACKGROUND:

On March 25, 1997, a grand jury sitting in the Middle District of Pennsylvania returned an indictment charging defendant Dale J. Julian with being a felon in possession of ammunition and firearms (Count I) and making a false statement in connection with the acquisition of a firearm (Count II). Julian entered a plea of not guilty at his arraignment on May 27, 1997. Jury selection currently is scheduled for October 9, 1997, with trial to commence as soon as feasible thereafter.

Before the court are Julian's pre-trial motions, including a motion to dismiss the indictment or to suppress evidence of expunged criminal record. A motion to suppress evidence will be addressed by separate order.

After completion of a draft of this memorandum and order, as well as the order relating to the motion to suppress evidence, the Government moved for an extension of time in which to respond to Julian's pre-trial motions. Based on our disposition of the motions and the fact that the memorandum and orders were complete, we see no purpose to be served by a response at this juncture. We note, however, that the government was late even in moving for an extension of time. This silence on the part of the government should be viewed in the context of a motion affecting the validity of the instant prosecution and the government's own evidence that Julian was engaging regularly in the disposition of stolen firearms. *See* Affidavit of Special Agent Donna Slusser in Support of Probable Cause, appended as Exhibit D to Defendant's Pre–Trial Motions. It was due to the importance of the issues that the court addressed the motions without the aid of a brief from the government. Regardless, the motion for an extension of time will be denied as moot.

#### DISCUSSION:

##### I. FACTS

The following are the facts necessary for disposition of the instant motion. They are the facts set forth in Julian's motion and the indictment, but should not be considered findings nor otherwise regarded as conclusive statements of fact.

Count I of the indictment charges Julian with possession of 12 different firearms. The firearms were discovered during the execution of a search warrant at Julian's residence on November 22, 1994. One of the firearms was a .22 pistol which was purchased by Julian from the owner of D & R

Sports Center, a licensed firearms dealer. On a form completed relative to this purchase, Julian indicated that he had not been convicted previously of an offense punishable by imprisonment for more than one year.

Contrary to this representation, Julian entered pleas of guilty to 12 counts of burglary on December 7, 1970, in the Court of Common Pleas of Columbia County, Pennsylvania, and was sentenced to a term of imprisonment. The burglary offenses were punishable by imprisonment for more than one year.

On August 23, 1995 (nine months after the search), Julian filed a motion in the Court of Common Pleas of Columbia County to set aside the 1970 convictions for burglary based on lack of jurisdiction. That court granted the motion by Order of Court dated October 5, 1995, "upon agreement of the Commonwealth." Defendant's Pre–Trial Motions, Exhibit F. Further, the Court ordered the matter expunged because the Commonwealth failed to object. *Id. See also* 18 Pa. Cons. Stat. Ann. §§ 9102, 9122 (defining "expunge" and providing for expungement [1] of a criminal record, respectively).[2]

Julian now moves to dismiss the present indictment because he no longer is a convicted felon. The argument continues that the expungement of the record makes the 1970 conviction void *ab initio* so that Julian cannot be considered to have been a felon on November 22, 1994, when the government alleges that he was found in possession of the firearms. Moreover, Julian contends that the order vacating his conviction and expung-

ing the record makes his statement on the firearms purchase form retroactively or retrospectively accurate.

## II. STATUTORY PROVISIONS

Count I is brought pursuant to 18 U.S.C. § 922(g), which reads in relevant part:

> It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year; ...

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). The penalty for violating § 922(g) is a fine, up to ten years' imprisonment, or both. 18 U.S.C. § 924(a)(2).

Count II of the indictment is brought pursuant to 18 U.S.C. § 922(a), which reads in relevant part:

> It shall be unlawful—
>
> ...
>
> (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrep-

---

1. In researching this memorandum, we found that the words "expungement" and "expunction" both appeared in materials related to the elimination of a past criminal record. According to dictionaries consulted by the court, "expunction" is the more common term. *See* The Random House Dictionary of the English Language 683 (2d ed.1987) (defining "expunction" without a listing for "expungement"). However, "expungement" appears to be proper for legal documents. Black's Law Dictionary 582 (6th ed.1990) (defining "expungement of record" without a listing for "expunction"). One dictionary contains a listing for "expunction" but sets forth "expungement" among noun forms in the margin. Webster's New International Dictionary 899 (2d ed.1934). The latter dictionary explains that, when a verb is derived from French, a noun form is formed by adding the suffix, "-ment."

*Id.* at 1536. "Expunge" is derived both from Latin (*expungere*) and French (*ex + pungere*). *Id.* at 899. Hence, both forms are proper. Since the statutes, 18 U.S.C. § 921(a)(20) and 18 Pa. Cons.Stat. Ann. § 9122, uses the word "expungement," we will do the same.

2. Julian discusses at length the fact that his criminal record was expunged under Pennsylvania law. It appears, however, that expungement is merely a record-keeping, i.e. clerical, function. The order vacating the judgment is of more moment as it is that portion of the order, not the expungement, that renders the conviction void. Regardless, we consider the conviction as having been set aside for purposes of the federal firearms statutes because disposition of the motion is unaffected.

resented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter;

...

18 U.S.C. § 922(a)(6). The same potential penalty applies for a violation of this provision. Sec. 924(a)(2).

In either instance, then, Julian may be found guilty only if he was convicted of a "crime punishable by imprisonment for a term exceeding one year." Under Count I, his possession (if proven) of the firearms would be unlawful, and, with respect to Count II, his statement (if proven) that he had not been so convicted would be false. Although the term is self-defining, it is clarified for purposes of firearms offenses as follows:

As used in this chapter—

(20) The term "crime punishable by imprisonment for a term exceeding one year" does not include—

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly pro-

vides that the person may not ship, transport, possess or receive firearms.
18 U.S.C. § 921(a)(20).

The issue is whether a conviction which is set aside and expunged *after* a felon [3] is found in possession of firearms and *after* the felon has stated in writing that s/he is not a felon is not a conviction for purposes of § 922.

### III. HISTORY OF § 922

This issue was addressed by the Court of Appeals for the Seventh Circuit in a case in which the defendant's prior conviction was set aside four days before his trial on the felon-in-possession charge. The district court denied a motion to dismiss, and the Seventh Circuit affirmed, stating, "The district court was not impressed by the recent expungement and neither are we." *United States v. Lee,* 72 F.3d 55, 58 (7th Cir.1995), *reh'g denied.* Since we are in agreement with the Seventh Circuit, we also are unimpressed by the after-the-fact vacating and expungement of Julian's criminal record. However, because different state law is at issue and because the opinion of the Seventh Circuit is somewhat terse, we believe that our reasons require more explication.

In *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the petitioner (defendant in the proceedings in the district court) had been convicted of former 18 U.S.C. § 1202(a)(1) (since repealed), which prohibited any person convicted of a felony from receiving, possessing, or transporting in commerce or affecting commerce any firearm. *Id.* at 56 n. 1, 100 S.Ct. at 916 n. 1. The underlying crime was a Florida conviction in 1961 for breaking and entering with intent to commit a misdemeanor, which was never reversed or set aside. *Id.* at 56–57, 100 S.Ct. at 916–17. The petitioner contended that the underlying felony was invalid because he had not been represented by counsel, in violation of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), so that the felon-in-possession conviction also was invalid. *Id.* at 57, 100 S.Ct. at 916–17.

---

**3.** For the sake of brevity, we use the term "felon" in a manner consistent with the statutes, that is, to refer to a person who has been convicted of a crime punishable under the law of the jurisdiction by a term of imprisonment in excess of one year. "Felony" refers to such a crime. These terms and the longer terms used in the statutes may at times be used interchangeably.

With respect to the statute, the Supreme Court first noted that the language was unambiguous: if the defendant had been convicted of a felony, s/he was excluded from firearm possession and ownership. *Id.* at 60, 100 S.Ct. at 918. "The statutory language is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury." *Id.* at 60–61, 100 S.Ct. at 918. The Court emphasized the fact that the statute provided specific exceptions, but not an exception for an outstanding felony conviction which might turn out to be invalid. Moreover, unlike other federal statutes involving a predicate felony, there was no vehicle for challenging the validity or constitutionality of the underlying conviction. *Id.* at 62, 100 S.Ct. at 919.

In addition to the plain language of the statute, the Court reviewed the legislative history of the Act of which it was a part, Title VII of the Omnibus Crime Control and Safe Streets Act of 1968. The primary purpose was to impose a firearms disability on any felony based on the fact of conviction, not on the validity of the conviction. *Id.* at 62–63, 100 S.Ct. at 919–20. The Act was passed in response to a rise in political assassinations and violent crimes involving firearms during the 1960's, and reflected a desire "to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Id.* at 63, 100 S.Ct. at 920 (internal quotations, citation omitted).

The Court continued by comparing Title VII of the Act (which contained § 1202) and Title IV (which contained § 922) and "detect[ed] little significant difference between" the provisions. *Id.* at 63–64, 100 S.Ct. at 919–20. Since the mere fact of indictment was sufficient to deprive a person of the right to possess a firearm under § 922(h)(1), the

more significant fact of conviction must be sufficient for the same purpose. *Id.* at 64, 100 S.Ct. at 920.

Finally, the Court noted that a convicted felon could pursue relief from a firearm disability in the form of a pardon or consent of the Secretary of the Treasury, or via a challenge to the conviction in the state courts.

It seems fully apparent to us that the existence of these remedies, two of which are expressly contained in the Omnibus Act itself, suggests that Congress clearly intended that the defendant clear his status *before* obtaining a firearm, thereby fulfilling Congress' purpose broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. . . .

*Id.* at 64–65, 100 S.Ct. at 920 (internal quotations, citation omitted; emphasis in original).

From the fact that there was no ambiguity in the language or the overall scheme of the Act, the Court concluded that a felon was prohibited from possessing a firearm despite the fact that the predicate conviction might be subject to collateral attack. *Id.* at 65, 100 S.Ct. at 920–21.[4]

The Supreme Court addressed the language of the Act again in *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845, *reh'g denied,* 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983). In that case, one Kennison was an individual with the power to direct the management and policies of New Banner. *See generally* 18 U.S.C. § 923(d)(1)(B). New Banner applied for and was granted licenses as a dealer in firearms and ammunition, as a manufacturer of ammunition, and as a collector of curios and relics. Kennison previously had pled guilty to a charge of carrying a concealed handgun under Iowa law, a crime punishable by, *inter alia,* imprisonment for a maximum term of five years. However, under Iowa law, the court deferred the entry of

---

4. Julian argues that *Lewis* and *Dickerson* were legislatively overruled by the amendments to §§ 921, 922. To the extent that Congress amended the statutes to reflect specific exceptions to the firearm disability, i.e. those that the Supreme Court had ruled were not set forth in the statute, we agree. However, the manner in which the statute was interpreted and applied (the statutory construction) has not been overruled. It seems evident that Congress continues to intend a broad proscription on firearm ownership, possession, and transportation in commerce for those persons deemed unfit for such as enumerated in the statutes, and the exceptions still should be read narrowly.

a judgment and placed Kennison on probation for two years. Upon successful completion of probation, the record was expunged and no final judgment of conviction was entered. When the Bureau of Alcohol, Tobacco and Firearms learned of the plea, it revoked New Banner's licenses. After administrative review, relief was sought in the courts until the matter reached the Supreme Court. The question was whether the deferred judgment (never entered) and expunction [5] of the record constituted a "conviction" for purposes of § 922(g)(1) and (h)(1). *Dickerson* at 106–110, 103 S.Ct. at 988–991.

The Supreme Court first reiterated the principle that the plain language generally controls, and if unambiguous is conclusive absent a clearly stated legislative intent to the contrary. *Id.* at 110, 103 S.Ct. at 990–991. Once again finding the language of the two statutes, Title VII and Title IV of the Act, analogous, the Court looked to *Lewis* and concluded again that the overall statutory scheme was intentionally broad, and was unambiguous: a person who had been "convicted" was subject to a firearms disability.*Id.* at 111, 103 S.Ct. at 991.

However, *Dickerson* required a further analysis, i.e. a clearer definition of "conviction," because the fact of conviction (as opposed to the validity of the conviction) was not at issue in *Lewis*. The Court looked to federal law and concluded that a guilty plea and imposition of a sentence of probation would constitute a conviction regardless of the lack of a formal entry of judgment. *Dickerson* at 111–114, 103 S.Ct. at 991–993.

The Court next considered whether the expunction by the state court nullified the conviction for purposes of the Act. The Act itself provided for nullification of the conviction, and relief from the firearms disability, through a qualifying pardon or consent of the Secretary of the Treasury, and the Court had noted in *Lewis*, 445 U.S. at 61 n. 5, 100 S.Ct. at 918 n. 5, that vacating or reversal of the conviction on direct appeal would nullify the conviction for purposes of the Act. However, nothing in the Act suggested that expunction under state law would nullify the conviction, nor does expunction indicate that the defendant was innocent. *Dickerson* at 114–115,

103 S.Ct. at 992–993. "In *Lewis* we held that the exception for convictions reversed or vacated on direct appeal did not make ambiguous that statute's clear application to convictions arguably vulnerable to collateral attack. We perceive no more ambiguity in the statute here than we did in *Lewis*." *Dickerson* at 115, 103 S.Ct. at 993.

One further line of reasoning recited in *Dickerson* is of special pertinence, and so we quote it at length:

2. Sections 922(g) and (h) impose the same disabilities upon a person who "*is* under indictment" for certain crimes, or who "*is* a fugitive from justice," or who "*is*" a drug addict or an unlawful user of certain drugs, or who "*has been* convicted in any court" of certain crimes, or who "*has been* adjudicated as a mental defective," or who "*has been* committed to a mental institution" (emphasis supplied). This use of the respective tenses is significant and demonstrates that Congress carefully distinguished between present status and a past event. We have noted this distinction in tenses in § 922, and its significance, before:

"Congress knew the significance and meaning of the language it employed. It used the present perfect tense ('who is') in §§ 922(h)(1), (2), and (3). The statute's pattern is consistent and no unintended misuse of language or of tense is apparent." *Barrett v. United States*, 423 U.S., [212] at 217 [96 S.Ct. 498, 501, 46 L.Ed.2d 450 (1976)] ...

And in *Scarborough v. United States*, 431 U.S., [563] at 570 [97 S.Ct. 1963, 1966, 52 L.Ed.2d 582 (1977)], ... we observed: "It is obvious that the tenses used throughout Title IV were chosen with care."

3. The imposition, by §§ 922(g)(4) and (h)(4), of continuing disability on a person who "has been" adjudicated a mental defective or committed to a mental institution is particularly instructive. A person adjudicated as a mental defective may later be adjudged competent, and a person committed to a mental institution later may be deemed cured and released. Yet Congress made no exception for subsequent curative

---

5  The word used by the Supreme Court in *Dickerson.*  See *Note 1, above.*

events. The past adjudication or commitment disqualifies. Congress obviously felt that such a person, though unfortunate, was too much of a risk to be allowed firearms privileges. *United States v. Bass*, 404 U.S., [336] at 344–345 [92 S.Ct. 515, 520–521, 30 L.Ed.2d 488 (1971)] . . . In the face of this fact, we cannot believe that Congress intended to have a person convicted of a firearms felony under state law become eligible for firearms automatically because of a state expunction for whatever reason.

*Dickerson* at 116–117, 103 S.Ct. at 993–994 (parallel citations omitted; emphasis in original).

Three years after and in response to *Dickerson*, Congress amended Chapter 44 of Title 18. *See generally United States v. Cassidy*, 899 F.2d 543, 547–549 (6th Cir.1990) (reviewing legislative history of the Firearm Owners Protection Act, Pub.L. No. 99–308, 100 Stat. 449 (1986)). Among the amendments was a revision of § 921(a)(20). Specifically, the last two sentences were added, requiring that "conviction" be defined under the law of the jurisdiction in which the defendant was convicted and providing that a conviction which "has been" expunged, etc., is not a conviction for purposes of Chapter 44.

## IV. APPLICABLE PRINCIPLES

■ Despite all of the foregoing, there is no absolute answer as to whether a convicted felon who is found in possession of a firearm may thereafter seek to have the prior felony set aside and, if successful, avoid the penalty of § 924(a)(2). However, a number of guiding principles are applicable:

(1) The firearm disability, once imposed, is to be read broadly consistent with Congress' express intent to prevent from gun ownership or possession certain classes of persons deemed unfit and/or unsafe for such. *See* 18 U.S.C. following § 921, Congressional Findings, Pub.L. No. 90–618, § 101 (1968).

(2) When Congress has intended to remove the firearm disability, it has been clear and careful in so indicating.

(3) Congress has indicated that state law governs whether a conviction thereunder will be considered a conviction for purposes of the firearm disability.

(4) Congress has indicated that, when a conviction is no longer considered such under state law, or when a person's civil rights are substantially restored under state law, the federal firearm disability no longer applies.

(5) Congress has used particular verb tenses to indicate the time at which the federal firearm disability becomes applicable and when it is no longer applicable.

(6) When Congress intends to have the firearm disability apply based on present status, it has referred to a person who "is" in a specified condition or situation.

(7) When Congress intends to have the firearm disability apply based on a past event, it has referred to a person who "has been" involved in the event.

Applying these varied principles to the statute, we conclude that an expungement does not retroactively "erase" the illegality of firearm possession while the conviction was outstanding. That Julian was prohibited from possessing a firearm prior to October 5, 1995, is without question. It also is beyond question that Julian was permitted to possess a firearm after October 5, 1995. Under *Lewis* and *Dickerson*, the prohibition is construed broadly, and only if Congress specified an exception to the prohibition will such an exception be found. Moreover, Congress has shown that it will provide for an exception when it so intends, and its use of language has been careful in this regard.

In this instance, we find no exception. The statute indicates that an expunged or otherwise set aside conviction will not be considered a conviction for purposes of the statute. It does not say that the conviction should be treated as if it never existed. Moreover, Congress chose to use the language, "has been expunged," indicating that it is referring to a past event and not a present condition. If the latter were Congress' intent, it would have said that any conviction "which is expunged" is not to be considered a conviction for purposes of § 922.

This reading also is consistent with a similar provision under § 922, that barring a person "who is under indictment for a crime punishable by imprisonment for a term ex-

ceeding one year" from shipping, transporting or receiving firearms via interstate commerce. 18 U.S.C. § 922(n). Nothing in § 922 indicates that a subsequent acquittal renders a violation of that subsection a nullity. The Supreme Court stated in *Lewis,* "Since the mere fact of indictment is a disabling circumstance, *a fortiori* the much more significant fact of conviction must deprive the person of a right to a firearm." 445 U.S. at 64, 100 S.Ct. at 920. *See also Dickerson* at 115–116, 103 S.Ct. at 993–994 (using firearm disability on persons under indictment as example of the sweep of the legislation). Congress reacted to *Lewis* and *Dickerson* by amending the statute to provide specific exceptions to the firearm bar and to provide that the law of the jurisdiction applies to the validity of a conviction and to a restoration of civil rights. If Congress desired to remove retroactively the firearm disability on those under indictment upon an acquittal, it would have amended the statute. It follows, then, that, if Congress wishes an expunged conviction to be retroactively inapplicable, it would amend § 921(a)(20), at the very least to read "which is expunged," as discussed above.

Our reading also is consistent with the broader purpose of the statute. A person convicted of a felony has been deemed to be a person who should not be permitted to have a firearm. Julian's reading of the statute would lead to a conclusion that felons may possess firearms in the hope that, if caught, they can simply challenge the conviction(s) thereafter. Requiring felons to challenge a conviction prior to possessing firearms is more consistent with the Congress' purpose as well as the language of the statutes.

While the Seventh Circuit is the only other court to have ruled on this specific issue, it cited other Courts of Appeals for the proposition that a court looks to the time of the alleged violation of § 922(g) to determine whether there is an outstanding conviction. *Lee* at 58 (citing *United States v. Chambers,* 922 F.2d 228, 238–239 (5th Cir.1991); *United States v. Mayfield,* 810 F.2d 943, 946 (10th Cir.1987); *United States v. Cabrera,* 786 F.2d 1097, 1098 (11th Cir.1986)). Other courts also have strongly suggested that the time of the commission of the offense or the time of arrest is the appropriate time frame.

For example, in *Mayfield,* the Tenth Circuit did not discuss specifically the amended version of § 921(a)(20), but did determine that the underlying conviction must be set aside before the defendant lawfully may possess a firearm:

> Moreover, the principle that a void judgment is not legally binding simply means that it may not be enforced. Yet we are not concerned here with enforcing Mayfield's felony theft conviction. We are concerned, instead, with the role of that conviction as a disqualifying condition for the purpose of obtaining firearms. While for most purposes the law ignores a void conviction, the federal firearms statutes represent a considered and deliberate exception to this inasmuch as they require that the conviction be declared void before a firearm is purchased.

810 F.2d at 946. *See also Beecham v. United States,* 511 U.S. 368, 374, 114 S.Ct. 1669, 1672, 128 L.Ed.2d 383 (1994) (when predicate offense was a federal offense, defendant "can take advantage of § 921(a)(20) only if they have had their civil rights restored under federal law ...”; emphasis added); *United States v. Estrella,* 104 F.3d 3, 6 (1st Cir.) (civil rights restoration discussed in context of government argument that right to serve on jury not restored when defendant purchased a pistol), *cert. denied,* —— U.S. ——, 117 S.Ct. 2494, 138 L.Ed.2d 1001 (1997); *United States v. Hall,* 20 F.3d 1066, 1069 (10th Cir.1994) (in reviewing lawfulness of charge under § 922(g), court looks at whether state had restored defendant's civil rights and whether state law prohibited defendant from possession of firearm at time of arrest).

## V. *FULL FAITH AND CREDIT*

■ Julian argues that the Full Faith and Credit Clause of the Constitution of the United States, art. IV, § 1, requires that we adhere to the October 5, 1995, order of the Court of Common Pleas. Actually, we make no decision on the merits of whether Julian actually was guilty of the 1970 burglaries, nor do we reach the merits of whether the convictions are valid at present. We determine only that, as of the date of the alleged violations of the federal firearms statutes, Julian's burglary convictions were outstand-

ing. *Cf. Mayfield* (quoted above; concern is role of conviction as disqualifying event under federal firearms statutes, i.e. the fact, not the validity, of the conviction). The order of the Court of Common Pleas is not contrary to that determination.

Also, we would note that the Pennsylvania Supreme Court held that a subsequent reversal of the underlying conviction did not require a new trial under the state law proscribing firearm possession by a person convicted of a crime of violence. *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583, 588 n. 6 (1982). *See also* 18 Pa. Cons.Stat. Ann. § 6105(a), (b) (prohibiting person convicted of burglary from, *inter alia,* possessing a firearm; effective 1995); former 18 Pa. Cons.Stat. Ann. §§ 6102, 6105 (prohibiting person convicted of crime of violence from ownership or possession of a firearm; burglary is a "crime of violence"). Julian's argument that expungement under state law renders lawful his prior possession of firearms is inconsistent with *Stanley,* as an expunged conviction is no more void than one which has been reversed on direct appeal.

### VI. EVIDENCE OF CONVICTION

The final point raised by Julian is that the records of his convictions in state court are inadmissible, having been expunged. We disagree. If an original writing cannot be obtained, other evidence of the content of a writing is admissible under Fed. R.Evid. 1004(2). Again, it is the fact of the prior conviction at the time Julian had the firearms in his possession that is relevant, not the current validity of the conviction.

### VII. CONCLUSION

Expungement of a prior conviction after an arrest for possession of a firearm by a felon does not "relate back" and render the firearm possession lawful. Julian's motion to dismiss will be denied. Moreover, since the relevant time period for examining the validity of the prior conviction is the time at which the firearm was possessed, evidence of a subsequently expunged conviction is not rendered inadmissible by the expungement. Julian's motion as it seeks to exclude evidence of his prior convictions will be denied as well.