Justice Alito,
with whom Justice Thomas joins, concurring in the judgment.
The question in this case is whether Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e et seq. (2000 ed. and Supp. V), prohibits retaliation against an employee who testifies in an internal investigation of alleged sexual harass *281 ment. I agree with the Court that the “opposition clause” of § 2000e-3(a) (2000 ed.) prohibits retaliation for such conduct. I also agree with the Court’s primary reasoning, which is based on “the point argued by the Government and explained by an [Equal Employment Opportunity Commission (EEOC)] guideline: When an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, that communication’ virtually always ‘constitutes the employee’s opposition to the activity.’” Ante, at 276. I write separately to emphasize my understanding that the Court’s holding does not and should not extend beyond employees who testify in internal investigations or engage in analogous purposive conduct.
As the Court concludes, the term “oppose” does not denote conduct that necessarily rises to the level required by the Sixth Circuit — i. e., conduct that is “ ‘consistent’ ” and “instigated or initiated” by the employee. 211 Fed. Appx. 373, 376 (2006). The primary definitions of the term “oppose” do, however, require conduct that is active and purposive. See Webster’s New International Dictionary 1709-1710 (2d ed. 1953); Random House Dictionary of the English Language 1010 (1966) (hereinafter Random Diet.); 10 Oxford English Dictionary 866-867 (2d ed. 1989). For example, the first three definitions of the term in the dictionary upon which the Court principally relies are as follows:
“1. to act against or provide resistance to; combat. 2. to stand in the way of; hinder; obstruct. 3. to set as an opponent or adversary.” Random Diet. 1359 (2d ed. 1987).
In accordance with these definitions, petitioner contends that the statutory term “oppose” means “taking action (including making a statement) to end, prevent, redress, or correct unlawful discrimination.” Brief for Petitioner 40.
In order to decide the question that is before us, we have no need to adopt a definition of the term “oppose” that is *282 broader than the definition that petitioner advances. But in dicta, the Court notes that the fourth listed definition in the Random House Dictionary of the English Language goes further, defining “oppose” to mean “ ‘to be hostile or adverse to, as in opinion” Ante, at 276 (emphasis added). Thus, this definition embraces silent opposition.
While this is certainly an accepted usage of the term “oppose,” the term is not always used in this sense, and it is questionable whether silent opposition is covered by the opposition clause of 42 U. S. C. § 2000e-3(a). It is noteworthy that all of the other conduct protected by this provision— making a charge, testifying, or assisting or participating in an investigation, proceeding, or hearing — requires active and purposive conduct. “ ‘That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.’” S. D. Warren Co. v. Maine Bd. of Environmental Protection, 547 U. S. 370, 378 (2006) (quoting Beecham v. United States, 511 U. S. 368, 371 (1994)).
An interpretation of the opposition clause that protects conduct that is not active and purposive would have important practical implications. It would open the door to retaliation claims by employees who never expressed a word of opposition to their employers. To be sure, in many cases, such employees would not be able to show that management was aware of their opposition and thus would not be able to show that their opposition caused the adverse actions at issue. But in other cases, such employees might well be able to create a genuine factual issue on the question of causation. Suppose, for example, that an employee alleges that he or she expressed opposition while informally chatting with a co-worker at the proverbial water cooler or in a workplace telephone conversation that was overheard by a co-worker. Or suppose that an employee alleges that such a conversation occurred after work at a restaurant or tavern frequented by co-workers or at a neighborhood picnic attended by a friend or relative of a supervisor.
*283 Some courts hold that an employee asserting a retaliation claim can prove causation simply by showing that the adverse employment action occurred within a short time after the protected conduct. See, e. g., Clark County School Dist. v. Breeden, 532 U. S. 268, 273 (2001) (per curiam) (noting that some cases “accept mere temporal proximity between an employer’s knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case”); see also Gorman-Bakos v. Cornell Cooperative Extension of Schenectady Cty., 252 F. 3d 545, 554 (CA2 2001); Conner v. Schnuck Markets, Inc., 121 F. 3d 1390, 1395 (CA10 1997); Dey v. Colt Constr. & Development Co., 28 F. 3d 1446, 1458 (CA7 1994). As a result, an employee claiming retaliation may be able to establish causation simply by showing that, within some time period prior to the adverse action, the employer, by some indirect means, became aware of the views that the employee had expressed. Where the protected conduct consisted of a private conversation, application of this rule would be especially problematic because of uncertainty regarding the point in time when the employer became aware of the employee’s private expressions of disapproval.
The number of retaliation claims filed with the EEOC has proliferated in recent years. See U. S. Equal Employment Opportunity Commission, Charge Statistics: FY 1997 Through FY 2007, http://www.eeoc.gov/stats/charges.html; Charge Statistics: FY 1992 Through FY 1996, http:// www.eeoc.gov/stats/charges-a.html (as visited Jan. 16, 2009, and available in Clerk of Court’s case file) (showing that retaliation charges filed with the EEOC doubled between 1992 and 2007). An expansive interpretation of protected opposition conduct would likely cause this trend to accelerate.
The question whether the opposition clause shields employees who do not communicate their views to their employers through purposive conduct is not before us in this case; the answer to that question is far from clear; and I do not understand the Court’s holding to reach that issue here. *284 For present purposes, it is enough to hold that the opposition clause does protect an employee, like petitioner, who testifies about unlawful conduct in an internal investigation.