CLAY, Circuit Judge,
dissenting.
This case presents the question of whether the undisputed restoration of Billy York Walker’s civil rights under Tennessee law has the effect, by operation of federal law, of restoring his federal civil rights so that he is exempt from the federal firearms ban applicable to felons pursuant to 18 U.S.C. § 921(a)(20). Contrary to the majority, I believe that both binding precedent and the nature of our federal system require a conclusion that Walker’s federal civil rights have been restored within the meaning of § 921(a)(20). I therefore respectfully dissent.
DISCUSSION
Under § 921(a)(20), a person who has been convicted of a felony may nonetheless become exempt from the federal ban on weapons and ammunition possession if that person’s civil rights have been restored. In relevant part, that provision states:
What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter!.]
§ 921(a)(20). The first sentence of this provision is referred to as the “choice of law clause,” and the second sentence is sometimes called the “exemption clause,” as it exempts certain convictions from the application of the Gun Control Act. See, e.g., Beecham v. United States, 511 U.S. 368, 369, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994). Walker claims the protection of the exemption clause on the grounds that his civil rights have been restored.
Though this Court’s task in evaluating Walker’s claim is essentially one of statutory interpretation, we do not write on a blank slate. Binding precedent prescribes the test: we must evaluate whether Walker’s federal civil rights — the right to vote, the right to seek and hold office, and the right to serve on juries — have been restored according to federal law. Beecham v. United States, 511 U.S. 368, 371-74, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994) (requiring that restoration be determined according to the law of the convicting jurisdiction); United States v. Cassidy, 899 F.2d 543, 549 (6th Cir.1990) (identifying the three dispositive rights). Additionally, the Supreme Court has settled that the restoration of rights under § 921(a)(20) may be accomplished by operation of law, absent any affirmative act of restoration or particularized decision with regard to an individual felon. Caron v. United States, 524 U.S. 308, 313, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998). Finally, despite the majority’s attempt to suggest otherwise, the Supreme Court has adopted a “plain-meaning” interpretation of the restoration of civil *731 rights, in recognition that the word “restore” means simply “ ‘to give back something that had been taken away.’ ” Logan v. United States, 552 U.S. 23, 31, 128 S.Ct. 475, 169 L.Ed.2d 432 (2007) (quoting with approval United States v. Logan, 453 F.3d 804, 805 (7th Cir.2006)); see also id. at n. 3 (reviewing dictionary definitions). Faithful application of these precedents, combined with respect for our federal constitutional system, compel a conclusion that Walker’s civil rights have been restored under federal law and that he is therefore no longer subject to the firearms prohibition.
A. The Issue Reserved in Beecham
The Supreme Court granted certiorari in Beecham to resolve a circuit split about whether the choice of law clause in § 921(a)(20) applied to the post-conviction events (i.e., pardons, expungement, and restoration of rights) listed in the exemption clause. 511 U.S. at 370-71, 114 S.Ct. 1669. The Eighth and Ninth Circuits had previously held that the choice of law clause applied only to the conviction itself, not to post-conviction events — leaving state law as the governing standard for the restoration of civil rights. United States v. Edwards, 946 F.2d 1347 (8th Cir.1991); United States v. Geyler, 932 F.2d 1330, 1333-34 (9th Cir.1991). The Fourth Circuit, in the two decisions reviewed by the Court in Beecham, reached the opposite result and rejected the proposition that state law governed the restoration of a federal felon’s civil rights. United States v. Beecham, 993 F.2d 1539 (4th Cir.1993) (Table); United States v. Jones, 993 F.2d 1131 (4th Cir.1993). The Supreme Court resolved the split in favor of the position taken by the Fourth Circuit, holding that whether a felon’s civil rights have been restored “is governed by the law of the convicting jurisdiction.” 511 U.S. at 371, 114 S.Ct. 1669. Thus, for those convicted of federal felonies, courts “must look to whether [their] civil rights were restored under federal law.” Id.
The Supreme Court stopped at this holding and on that basis affirmed the Fourth Circuit. Neither the Supreme Court nor the Fourth Circuit addressed how federal law applies to the question of whether a federal felon’s civil rights had been restored — an issue that had not been raised or briefed by the parties. The Supreme Court acknowledged the omission and expressly reserved the question of whether a federal felon’s civil rights may be restored under federal law, writing in footnote * (hereinafter “the Beecham footnote”):
This is a complicated question, one which involves the interpretation of the federal law relating to federal civil rights, see U.S. Const. Art. I, § 2, cl 1 (right to vote for Representatives); U.S. Const. Arndt. XVII (right to vote for Senators); 28 U.S.C. § 1865 (right to serve on a jury); consideration of the possible relevance of 18 U.S.C § 925(c) (1988 ed., Supp. IV), which allows the Secretary of the Treasury to grant relief from the disability imposed by § 922(g); and the determination whether civil rights must be restored by an affirmative act of a Government Official, see United States v. Ramos, 961 F.2d 1003, 1008 (C.A.1 [1992]), cert. denied, 506 U.S. 934, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992), or whether they may be restored automatically by operation of law, see United States v. Hall, 20 F.3d 1066 (C.A.10 1994). We do not address these matters today.
511 U.S. at 373 n. *, 114 S.Ct. 1669.
Both the government and the district court contend that Beecham forecloses Walker’s claim because the opinion addressed substantially identical facts — fed *732 eral felons whose rights were restored under state law — and yet in Beeeham the Court ultimately rejected the felons’ arguments that they were not subject to the federal firearm disability. The majority adopts a version of this argument by emphasizing that the Supreme Court could have reached the issues in the footnote, and suggests that the Court’s failure to do so is tantamount to a rejection of Walker’s claim.
Contrary to the majority’s argument, it is clear that Beeeham cannot be characterized as foreclosing a legal argument that it expressly declined to reach. Moreover, the Court’s reticence in this regard was perfectly understandable, and even to be expected. Of the several complex legal questions identified in the Beeeham footnote, only the “possible relevance” of § 925(c) had received any attention — and even that attention was fleeting — in the parties’ briefing. The Supreme Court is of course free to disregard arguments not raised in the lower courts or advanced by the parties before it. See, e.g., Burwell v. Hobby Lobby Stores, Inc., — U.S.-, 134 S.Ct. 2751, 2776, 189 L.Ed.2d 675 (2014) (“We do not generally entertain arguments that were not raised below and are not advanced in this Court by any party.”); Bell v. Wolfish, 441 U.S. 520, 531 n. 13, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (declining to reach argument not passed on by the lower courts or urged by the parties); Knetsch v. United States, 364 U.S., 361, 370, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960) (same). It is simply unremarkable that, in the exercise of judicial prudence, the Court. chose to leave the issues identified by the footnote for another day.
Now, more than a decade after Beeeham arid squarely presented with a claim that a felon’s civil rights have been restored under federal law, we have the benefit of subsequent precedent that provides clear guidance regarding the questions identified in the Beeeham footnote. We know that a felon’s civil rights may be restored by operation of law, without any affirmative act of restoration or case-by-case decisionmaking by a government agency or official. Caron, 524 U.S. at 313, 118 S.Ct. 2007. Additionally, the Sixth Circuit has identified the dispositive civil rights which must be restored in order for the exclusion to apply: “the right to vote, the right to seek and hold public office and the right to serve on a jury.”[1] United States v. Cassidy, 899 F.2d 543, 549 (6th Cir.1990); see also Hampton v. United States, 191 F.3d 695 (6th Cir.1999) (closely examining Michigan law to determine that the petitioner was entitled to serve on a jury before concluding that his civil rights were indeed restored). A direct application of these principles in this case establishes that Walker’s federal civil rights have been restored. The majority’s efforts to avoid this result are strained and unconvincing.
B. Restoration of Walker’s Federal Civil Rights
As the majority notes, Walker’s right to seek and hold federal office was never lost, and therefore has not been “restored.” See Logan, 552 U.S. at 31, 128 S.Ct. 475; U.S. Term Limits, Inc. v. Thornton, 514 *733 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). That leaves two rights to consider — the right to serve on a federal jury and the right to vote in federal elections. Both rights have been “restored” to Walker according to “the word’s ordinary meaning” of returning something that had previously been taken away. See Logan, 552 U.S. at 31 & n. 3, 128 S.Ct. 475.
1. The Right to Serve on Federal Juries
The majority announces that it will “assume” for purposes of this case that Walker’s federal right to serve on a jury has been restored pursuant to 28 U.S.C. § 1865(b)(5). Maj. Op. at 723. The majority’s squeamishness on this issue is difficult to understand — the majority identifies no reasonable alternative interpretation of § 1865 which would support any other conclusion, and it is impossible to identify what more could be required for Walker to meet that standard.
The federal statute provides that a person shall be deemed “qualified to serve on grand and petit juries in the district court unless he ... has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored.” § 1865(b)(5) (emphasis added). Because this language is nearly identical to the language in § 921(a)(20), the three civil rights identified in Cassidy — the right to vote, to hold office, and to serve on a jury — may properly be considered here as well. See Cassidy, 899 F.2d at 549; see also United States v. Green, 532 F.Supp.2d 211, 212 (D.Mass. 2005) (holding that the term “civil rights” in § 1865 “plainly involves the right to vote, to serve on juries, to run for office”) (citing Cassidy, 899 F.2d at 549).
If the measuring stick is state law— after all, 28 U.S.C. § 1865(b)(5) does not contain a choice of law clause like the one in 18 U.S.C. § 921(a)(20) — then it is plain that Walker’s civil rights have been restored and he may again serve on a federal jury. The Tennessee state court order obtained by Walker restored to him all “civil and citizenship rights,” specifically including “the right to vote, the right to serve on a jury, and the right to hold an office of public trust.” (R. 1-1 at PageID 9-10.) Tennessee courts are authorized to restore “full rights of citizenship” under the procedure outlined in Tenn.Code Ann. §§ 40-29-101 to 40-29-105, and there is no dispute that the court-ordered restoration of Walker’s state civil rights was valid. See May v. Carlton, 245 S.W.3d 340, 344 (Tenn.2008) (classing “serving as a juror” among the “rights of citizenship” affected by a conviction); Tenn.Code Ann. § 22-1-102 (providing that convicted felons lose their right to serve on a jury); State v. Black, 2002 WL 1364043, *11-12 (Tenn.Ct. App.2002) (affirming the restoration under § 40-29-105 of the petitioner’s right to vote); Bryant v. Moore, 198 Tenn. 335, 279 S.W.2d 517 (1955) (holding that the right to seek and hold public office was encompassed in the restoration of rights under substantially similar prior statutory language).
To the extent Walker’s federal civil rights are relevant to § 1865(b)(5), his federal right to vote has been restored by operation of law as a result of the reinstatement of his voting rights under state law, U.S. Const, art. I, § 2, cl. 1; id. amend. XVII, and his right to seek and hold federal office is, as discussed above, unaffected by his felony conviction. Walker has thus met any conceivable requirement for the restoration of his right to serve on a federal jury. Applying the same plain-meaning interpretation that the *734 Supreme Court gave the parallel provision in § 921(a)(20), the right “had been taken away” from him as a consequence of his felony conviction under § 1865(b)(5), and it has been “give[n] back” under the terms of the same provision as a consequence of the restoration of his civil rights under state law. See Logan, 552 U.S. at 31 & n. 3, 128 S.Ct. 475.
2. The Right to Vote in Federal Elections
The majority acknowledges that, by virtue of the restoration of his right to vote under Tennessee law, Walker has regained his right to vote in federal elections. See U.S. Const, art. I, § 2, cl. 1; id. amend. XVII (adopting state law qualifications for the right to vote in federal elections). This result flows from the constitutional design of our federal system: “[The states] define who are to vote for the popular branch of their own legislature, and the constitution of the United States says the same persons shall vote for members of congress in that state. It adopts the qualification thus furnished as the qualification of its own electors for members of congress.” Ex parte Yarbrough, 110 U.S. 651, 663, 4 S.Ct. 152, 28 L.Ed. 274 (1884); see also Gray v. Sanders, 372 U.S. 368, 379, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963) (“States can within limits specify the qualifications of voters in both state and federal elections; the Constitution indeed makes voters’ qualifications rest on state law even in federal elections.”). Although the right to vote in federal elections incorporates voter qualifications set by state law, the right is indisputably a federal civil right, with “its foundation in the Constitution of the United States.” Wiley v. Sinkler, 179 U.S. 58, 62-64, 21 S.Ct. 17, 45 L.Ed. 84 (1900); see also Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); United States v. Classic, 313 U.S. 299, 310, 314-15, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).
The majority does not dispute that Walker lost his right to vote under Tennessee law as a consequence of his federal felony conviction. See Tenn.Code Ann. §§ 2-2-102, 40-20-112, 40-29-201. By operation of federal law, the loss of Walker’s state voting rights resulted in the loss of his federal voting rights. U.S. Const, art. 1, § 2, cl. 1; id. amend. XVII. Nor does the majority dispute that, by virtue of those same federal constitutional provisions, the restoration of Walker’s right to vote under state law has resulted in the reinstatement of his right to vote in federal elections. Id.; see Tenn.Code Ann. §§ 40-29-101, 40 — 29—105(b)(1), (b)(6) and (b)(7) (authorizing the reinstatement of citizenship rights, including the right to vote); see also State v. Johnson, 79 S.W.3d 522, 527 (Tenn.2002) (discussing the restoration of rights scheme created by Tennessee statutes). These realities satisfy the plain meaning of the restoration of civil rights clause under § 921(a)(20): Walker’s right to vote in federal elections, secured to him by nothing less than the Constitution of the United States, was first taken away as a consequence of his felony, then subsequently reinstated under federal law which, by constitutional design, gives effect to the state law restoration of voting rights. Logan, 552 U.S. at 31 & n. 3, 128 S.Ct. 475; see also Caron, 524 U.S. at 313, 118 S.Ct. 2007 (holding that civil rights may be restored by operation of law alone). Walker’s federal civil right to vote has been “restored” within the common sense, ordinary meaning of the term.
The majority takes the position that Walker’s federal civil right to vote has not been restored within what it terms a “fair reading” of § 921(a)(20). Maj. Op. at 727. This “fair reading” has one precarious source: the Supreme Court’s observation *735 in Logan that the restoration of civil rights, like expungement and pardon, “ex-tendió] to an offender a measure of forgiveness,” while a felon whose civil rights were never lost “is simply left alone” and “receives no status-altering dispensation, no token of forgiveness from the government.” 552 U.S. at 26, 31, 128 S.Ct. 475. Seizing on the concept of a “token of forgiveness,” the majority insists that the law reinstating Walkeró federal right to vote must do so out of an explicit federal judgment either “regarding his conviction in particular or the voting rights of felons in general.” Maj. Op. at 725. Logan cannot be stretched to this extreme. Indeed, the case affirmed the ordinary meaning of the word “restore” as the return of something that had been taken away — a requirement that has been met in Walker's case.
Though purporting to rely on Logan, the majority is in fact adding a new dimension to our well-established inquiry: a requirement that the federal government take an affirmative act to restore Walkeró voting rights, and that the affirmative act be explicitly targeted to addressing felons’ rights. This requirement is out of sync with the Supreme Court’s holding that restoration of rights may be accomplished by operation of law. See Caron, 524 U.S. at 313, 118 S.Ct. 2007. Just as “[n]othing in the text of § 921(a)(20) requires a case-by-case decision to restore civil rights to this particular offender,” 524 U.S. at 313, 118 S.Ct. 2007, nothing in the text of the statute requires an affirmative act, explicitly branded as a token of forgiveness, on the part of the convicting jurisdiction. Cf. § 921(a)(20) (providing, in passive voice, that “[a]ny conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter”). Instead, the text directs us simply to look at whether Walker’s rights have been restored “in accordance with the law of the jurisdiction in which the [criminal] proceedings were held.” § 921(a)(20); Beecham, 511 U.S. at 371, 374, 114 S.Ct. 1669. The majority cannot deny that Walker’s right to vote under federal law has been restored within the ordinary meaning of the term — so in order to avoid a result it dislikes, it saddles the term “restore” with requirements relating to the form and the express purpose of the governing law which have no relation to the word itself, and no other support in the text of the statute.
I have no dispute with the majority’s holding that the restoration of rights must be made with respect to a particular conviction, as the statute specifies. That requirement, however, is plainly met here, where the Tennessee state court determined that Walker should regain the state civil rights he lost as a result of his federal conviction. Consistent with principles of federalism, the constitutional provisions governing his right to vote in federal elections give federal effect to the state’s “measure of forgiveness” for his conviction. Logan, 552 U.S. at 26, 128 S.Ct. 475.
3. The Majority’s Purported “Fair Reading” of § 921(a)(20)
The “fair reading” of § 921(a)(20) dictated by the majority is, in the final analysis, a deviation from the ordinary meaning of the text apparently rooted in the majority’s distaste for the prospect of reinstating a felon’s gun rights.[2] Under a straightfor *736 ward application of federal law, Walker’s right to vote in federal elections and his right to serve on a federal jury have both been restored — that is, returned to him after they were previously lost as a result of his federal conviction. See Logan, 552 U.S. at 31 & n. 3, 128 S.Ct. 475. Unable to gainsay this reality, the majority moves the goalposts — -the restoration of his voting rights is not a satisfactory “restoration” because it resulted not from an affirmative act of forgiveness by the federal government, but only the automatic operation of law.
Having found a reason to disregard the restoration of Walker’s federal voting rights, the majority abandons the position of high-minded symbolism to insist on the literal import of the plural: the statute exempts only convictions for which civil rights, plural, have been restored, so the restoration of the single right, the majority is willing to recognize cannot exempt Walker from the firearm disability. The majority explains that the plural matters because the restoration of a single right reflects less trust and forgiveness,- less confidence that the felon “can function as a normal citizen in more than one institutional context.” Maj. Op. at 727. The federal government, of course, is not withholding any of Walker’s civil rights — all three of which he possesses today. Rather, federal law relies on Tennessee’s trust in Walker to restore not one, but two of his federal citizenship rights. Under § 1865(b)(5), because Tennessee has restored Walker’s state civil rights, federal law restores his right to serve on a federal jury. Similarly, under the constitutional provisions governing voter qualifications, because Tennessee has restored Walker’s right to vote in state elections, federal law restores his right to vote in federal elections.
CONCLUSION
It should be beyond the debate that the fairest reading of § 921(a)(20) would give effect to the ordinary meaning of the text and honor the interdependence inherent in our federal constitutional design. Walker lost his federal civil rights to serve as a juror and to vote after his conviction, and, as a result of the Tennessee court order reinstating his state civil rights, those rights have been restored to him in accordance with federal law. I would therefore hold that he has met the requirements of the exemption clause and is not subject to the federal firearms ban applicable to felons.

. The Supreme Court has implicitly approved relying on this triad of rights to test whether a felon's civil rights have been restored. See Logan, 552 U.S. at 28, 128 S.Ct. 475 (“While § 921(a)(20) does not define the term ‘civil rights,’ courts have held, and petitioner agrees, that the civil rights relevant under the above-quoted provision are the rights to vote, hold office, and serve on a jury.”); Caron, 524 U.S. at 316, 118 S.Ct. 2007 (1998) ("Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition.”).

. As support for its preferred policy outcome, the majority points to the annual appropriations ban prohibiting the Bureau of Alcohol, Tobacco, and Firearms from acting on petitions for "relief from the disabilities imposed by Federal laws with respect to the acquisition ... or possession of firearms." 18 U.S.C. § 925(c). Although acknowledging that § 925(c) itself has no bearing on whether Walker’s federal civil rights have been re *736 stored, the majority cites to legislative history connected with the appropriations ban to assert that Congress believed that " ‘those who commit felonies should not be allowed to have their right to own a firearm restored.’ ” Maj. Op. at 729 (quoting H.R.Rep. No. 104-183, at 15 (1995)). Taken at face value, this line from the .legislative history proves too much. Congress has never repealed § 921(a)(20), which operates to restore the firearm rights of some who have committed felonies, and it goes without saying that a statement in legislative history cannot negate a duly enacted statute. In context, moreover, it is clear that Congress was expressing a view related to allocation of resources in reference to the application procedure contained in § 925(c); in its words, "[tjhere is no reason to spend the Governments' [sic] time or taxpayer’s money to restore a convicted felon’s right' to own a firearm.” H.R.Rep. No. 104-183, at 15 (1995).