# Applicability of 18 U.S.C. § 207(f) to Public Relations Activities Undertaken for a Foreign Corporation Controlled by a Foreign Government

A foreign corporation is a "foreign entity" under 18 U.S.C. § 207(f) if it exercises sovereign authority or functions de jure or de facto.

A former official's proposed activities are not prohibited by section 207(f)(1) if the former official does not provide those services on behalf of a "foreign entity," regardless of whether the former official's services incidentally benefit the foreign entity's interests.

Where the former official does provide services on behalf of a "foreign entity," the proposed public relations and media activities would fall within the scope of section 207(f)(1) if the former official acts with the requisite intent to influence a decision of an officer or employee of the United States government.

August 13, 2008

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

Section 207(f) of title 18, United States Code, prohibits former government officials from "represent[ing]" or "aid[ing] or advis[ing]" a "foreign entity" under certain circumstances within one year of leaving government service. 18 U.S.C. § 207(f)(1) (2000). Your office has sought our opinion about the application of this prohibition to proposed public relations and media activities of a former senior official of the Department of Commerce on behalf of a foreign corporation that is owned and controlled by an instrumentality of a foreign government. That request raises three questions: (1) whether the foreign corporation is a "foreign entity" for purposes of section 207(f); (2) if not, whether the proposed activities are nevertheless prohibited because the foreign government supported the foreign corporation's efforts to influence the United States government; and (3) if the foreign corporation is a "foreign entity," whether the proposed activities fall within the class of activities that section 207(f)(1) prohibits.[1]

For the reasons described below, we conclude that a foreign corporation is a "foreign entity" under section 207(f) if it exercises sovereign authority or functions de jure (i.e., by formal delegation) or de facto. Based on the information provided, however, we are unable to reach a conclusion about whether the particular foreign corporation described in your letter is such a "foreign entity."

---

[1] Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from John J. Sullivan, General Counsel, Department of Commerce (Nov. 23, 2005) ("Commerce Letter"). We also sought and received the views of the Office of Government Ethics ("OGE"). *See* Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Marilyn L. Glynn, General Counsel, Office of Government Ethics (Dec. 12, 2005) ("OGE Letter").

We further conclude that the former official's proposed activities are not prohibited by section 207(f)(1) if the former official does not provide those services on behalf of a "foreign entity," regardless of whether the former official's services incidentally benefit the foreign entity's interests. Where the former official does provide services on behalf of a "foreign entity," however, we believe that the proposed public relations and media activities would fall within the scope of section 207(f)(1), if the former official acts with the requisite intent to influence a decision of an officer or employee of the United States government.

## I.

Your letter states that the foreign corporation at issue is a subsidiary of company owned and controlled by an instrumentality of a foreign government. The foreign government originally established the parent corporation as a state-owned company with overall responsibility for the administration and development of the foreign government's offshore petroleum operations. The parent company later transferred these operational and commercial interests to the subsidiary company at issue here.

The subsidiary made a public offer to purchase a United States oil and gas company. The bid was to be financed partly through loans from the subsidiary's state-owned parent corporation and partly from a foreign bank, also owned by the foreign government. In response to criticism of the bid from members of Congress and others in the United States, the foreign government made public statements demanding that the United States government refrain from interfering in the proposed transaction. While the bid was pending, a communications and media firm asked a former senior official of the Department of Commerce to perform work as a consultant on behalf of the foreign corporation. The proposed work would have included writing op-ed pieces and articles supporting the purchase in newspapers, magazines, and trade journals, and responding to reporters who contacted him about the matter. The former official did not plan to meet with any U.S. government officials on behalf of the foreign corporation, nor did he plan to act as a lawyer, agent, or other official representative for the company. Although the one-year period in which section 207(f) would have applied has expired, your office has advised that the questions raised in your letter are recurring ones and that it continues to seek our opinion on the subject.

## II.

We begin with the question whether the foreign corporation at issue is a "foreign entity" for purposes of 18 U.S.C. § 207(f). Under that provision, former senior officials of the federal government are subject to a temporary post-employment restriction on activities conducted on behalf of a "foreign entity."

Section 207(f)(1) provides that for one year after leaving government employment, a former senior official may not knowingly:

> (A) represent[] a foreign entity before any officer or employee of any department or agency of the United States with the intent to influence a decision of such officer or employee in carrying out his or her official duties, or

> (B) aid[] or advise[] a foreign entity with the intent to influence a decision of any officer or employee of any department or agency of the United States, in carrying out his or her official duties.

18 U.S.C. § 207(f)(1). A "foreign entity" for purposes of the restriction is "the government of a foreign country as defined in section 1(e) of the Foreign Agents Registration Act of 1938, as amended, or a foreign political party as defined in section 1(f) of that Act." *Id.* § 207(f)(3). A "government of a foreign country" under the Foreign Agents Registration Act ("FARA"), in turn,

> includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or over any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated.

22 U.S.C. § 611(e) (2000).[2]

Under this definition, we agree with the Office of Government Ethics ("OGE") that ownership or control by a foreign government, standing alone, does not necessarily make a foreign corporation a "foreign entity" for purposes of 18 U.S.C. § 207(f). *See* OGE, *Summary of Post-Employment Restrictions of 18 U.S.C. § 207*, at 11 (July 29, 2004) ("*Summary of Post-Employment Restrictions*") (attachment to Memorandum to Designated Agency Ethics Officials, General Counsels and Inspectors General, from Marilyn L. Glynn, Acting Director, Office of Government Ethics, *Re: Reissuance of Post-Employment Summary*, DO-04-023 (July 29, 2004))

---

[2] We note that this statutory definition of "government of a foreign country" differs significantly from definitions of "foreign government" or "foreign state" found elsewhere in the United States Code. For instance, a "foreign government" for purposes of foreign gift rules is defined to mean "any unit of foreign governmental authority," "any international or multinational organization whose membership is composed of any unit of foreign government," and "any agent or representative of any such unit or such organization, while acting as such." 5 U.S.C. § 7342(a)(2) (2000). Similarly, the Foreign Sovereign Immunities Act defines "foreign state" to mean any "separate legal person . . . which is an organ of a foreign state . . . or a majority of whose shares or other ownership interest is owned by a foreign state . . . and which is neither a citizen of a State of the United States . . . nor created under the laws of any third country." 28 U.S.C. § 1603 (2000).

(available at http://www.oge.gov/OGE-Advisories/Legal-Advisories/Attachment-to-DO-04-023--Summary-of-Post-Employment-Restrictions-of-18-U-S-C--§-207/, last visited Aug. 15, 2014). The touchstone of the statute's definition is instead whether an entity "exercis[es] sovereign de facto or de jure political jurisdiction over [all or part of a foreign] country," or exercises "such sovereign de facto or de jure authority or functions" by delegation. 22 U.S.C. § 611(e). Because foreign corporations generally do not themselves have "sovereign . . . political jurisdiction over [a] country" but rather exercise any sovereign powers they may possess by delegation, we focus on the latter portion of 22 U.S.C. § 611(e), which states that the term "foreign entity" includes an entity that exercises "sovereign de facto or de jure authority or functions" by "direct[] or indirect[]" delegation from a foreign government. *Id.* Under this portion of the statutory definition, as OGE has advised, "[a] foreign commercial corporation will not generally be considered a 'foreign entity' for purposes of section 207(f) unless it exercises the functions of a sovereign" as specified in section 611(e), i.e., the exercise of "political jurisdiction over . . . any part of [a foreign] country." *Summary of Post-Employment Restrictions* at 11; *accord* OGE, *Letter to a Private Attorney*, Informal Advisory Ltr. 03x1, 2003 WL 23675077 (Jan. 2) ("OGE Advisory Letter").

Whatever the precise limits of "sovereign political jurisdiction," however, it is plain that not every governmental action involves the exercise of a "sovereign authority or function": some governmental actions are merely "proprietary" or "commercial" in nature, *see Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 74, 90 (2007) (citing *Opinion of the Justices*, 3 Greenl. (Me.) 481, 483 (1822)), a distinction that OGE has recognized in assessing whether a foreign corporation is a "foreign entity" under section 207, *see* OGE Advisory Letter, 2003 WL 23675077, at *2 (advising that a foreign government-owned corporation that performed "strictly commercial" tasks was not a "foreign entity" under section 207(f)). A government does not exercise sovereign authority, for example, when it elects to act as a "market participant" or perform "strictly commercial" functions. *See New Energy Co. v. Limbach*, 486 U.S. 269, 277 (1988) (distinguishing a state's activities in its "distinctive governmental capacity" from activities in its "more general capacity of a market participant," such as when it "manufacture[s] and sell[s] cement"); OGE Advisory Letter, 2003 WL 23675077, at *2. Even in circumstances where a government has reserved a monopoly for itself or a government-owned corporation in the relevant market, it may perform proprietary or commercial functions that are not uniquely "sovereign" but rather are common to public and private entities alike. When performing them, a government does not exercise regulatory authority, execute or enforce the law, or, more generally, take actions that are associated with the exercise of "sovereign political jurisdiction" over a country within the meaning of 22 U.S.C. § 611(e). Thus, we agree with OGE that a foreign government owned corporation that performs "strictly commercial" functions is not a "foreign entity"

for purposes of section 207(f). *See* OGE Advisory Letter, 2003 WL 23675077, at *2.

In sum, the determination whether a foreign commercial corporation is a "foreign entity" for purposes of section 207(f) depends on whether the corporation possesses delegated authority or performs functions that involve the exercise of "sovereign . . . political jurisdiction," which, at a minimum, excludes foreign corporations that perform only proprietary or commercial functions that may be performed by a private entity without any governmental delegation. Applying this inquiry to a corporation owned or controlled by a foreign government requires close attention to the authority the company exercises and the functions it performs, both by formal delegation from a foreign government and in practice. *See* 22 U.S.C. § 611(e) ("government of a foreign country . . . includes . . . any group or agency to which such sovereign *de facto or de jure* authority or functions are . . . delegated") (emphasis added); *see also* OGE Advisory Letter, 2003 WL 23675077, at *2 (examining the authority and functions exercised by a foreign corporation in practice).

We lack sufficient information to reach a conclusion about whether the foreign corporation at issue is a "foreign entity" for purposes of 18 U.S.C. § 207(f). Many of the functions it performs ("petroleum exploration, development, production, and sales activities," Commerce Letter at 6) could be proprietary or commercial, rather than sovereign, in nature. Your letter, however, describes other authority or functions ("administration and development of offshore petroleum operations with foreign oil and gas companies," Commerce Letter at 5) that may be sovereign, depending on the manner in which they are conducted. As part of the "administration and development of offshore petroleum operations with foreign oil and gas companies," for example, the foreign corporation might have political authority to exclude others from access to the foreign country's offshore oil and gas reserves by setting policy governing oil and gas offshore operations, or by granting licenses for oil and gas extraction. On the other hand, the "administration and development of offshore petroleum operations" might only involve purely commercial activities in the offshore oil and gas industries that can be performed without any delegation of "sovereign" authority. Without more information about the details of the particular authorities and functions of the foreign corporation, however, we cannot determine whether it performs any sovereign functions or whether its functions are instead "strictly commercial." Therefore, we are unable to determine whether the foreign corporation in question is a "foreign entity" under 18 U.S.C. § 207(f).

## III.

Your office also has asked whether, even if the foreign corporation is not a "foreign entity," and even though the former Commerce official did not propose to work on behalf of the foreign government, the prohibition in section 207(f)(1) would nonetheless bar the proposed consulting engagement "if the [foreign

government] is actively supporting the company's efforts to influence the United States Government" and has a financial interest in the matter to which the former official's activities would be addressed. Commerce Letter at 6. As we understand the facts, the foreign government made public statements supporting the foreign corporation's offer to buy the U.S. company and urging Congress not to interfere with the transaction. *See id.* at 7. The foreign government also had a financial interest in the proposed transaction, because it would have partially financed the deal. *Id.* Thus, the foreign government apparently had a common interest with the foreign corporation in persuading U.S. government officials not to block the deal.

We understand your question to be whether, in light of the foreign government's financial interest and activities supporting the proposed deal, the former official's activities on behalf of the foreign corporation in connection with its bid for the U.S. company would have been considered to "represent[]" or "aid[] or advise[]" the foreign government itself, which is clearly a "foreign entity" under section 207(f)(3). We answer this question in the negative. For the reasons given below, we conclude that section 207(f) does not prohibit former government officials from taking actions that are not undertaken on a foreign entity's behalf, regardless of whether the official's actions benefit the foreign entity in some way.

Section 207(f)(1)'s one-year post-employment restriction applies where a former government official "represents a foreign entity" or "aids or advises a foreign entity." 18 U.S.C. § 207(f)(1). Two of the three actions prohibited by section 207(f)—representing and advising—necessarily require a relationship between the former government official and a foreign entity. As OGE has said, a former official "'represents' a foreign entity when he acts as an agent or attorney for or otherwise communicates or makes an appearance on behalf of that entity to or before any employee of a department or agency." *Summary of Post-Employment Restrictions* at 11. Similarly, a former official "advise[s] a foreign entity" when he provides his counsel and expertise to the entity directly; he does not "advise" an entity, as that word is normally used, by making unsolicited observations to the public at large that prove helpful to the entity. *See Webster's Third New International Dictionary* 32 (1993) (defining "advise" to mean "to give advice to," and providing as an example, "among those *advising* the president"); *The Compact Oxford English Dictionary* 22 (1992) ("To offer counsel, as one of a consulting body; to give advice . . . . To give counsel to, to counsel, caution, warn.") (giving several examples involving the direct provision of advice). Thus, with respect to "represent[ing]" and "advis[ing]," section 207(f)(1) does not bar former government officials from taking actions that incidentally benefit the foreign entity unless they act on behalf of a foreign entity.

Conceivably, a person might "aid[] . . . a foreign entity" by taking actions that benefit the entity without providing services on its behalf. But such an expansive interpretation of "aids . . . a foreign entity" does not comport with the most natural reading of the statute. In its statutory context, "aids" is a part of the phrase "aids or

advises" in section 207(f)(1)(B) and is parallel to "represents" in section 207(f)(1)(A). Under the interpretive canon *noscitur a sociis*, "aids" should thus be read in the context of its statutory neighbors "to avoid ascribing to [it] a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). Rather, as the Court has explained, where "several items in a list share an attribute," the canon of *noscitur a sociis* "counsels in favor of interpreting the other items as possessing that attribute as well." *Beecham v. United States*, 511 U.S. 368, 371 (1994); *see also James v. United States*, 550 U.S. 192, 222 (2007) (Scalia, J., dissenting) (under the canon of *noscitur a sociis*, "which of various possible meanings a word should be given must be determined in a manner that makes it 'fit' with the words with which it is closely associated"). Applying this interpretive canon here, the term "aids," like the terms "represents" and "advises," is best construed to encompass a category of services a person provides on behalf of a foreign entity, not any activity that incidentally benefits the foreign entity.

The statutory history of 18 U.S.C. § 207(f) confirms our view that a former senior official does not violate the restriction unless he or she provides services on behalf of a foreign entity. As originally enacted in the Ethics Reform Act of 1989, section 207(f)(1)(A) applied to any former senior official who "represents *the interests of* a foreign entity before any officer or employee of any department or agency." Pub. L. No. 101-194, § 101(a), 103 Stat. 1716, 1722 (1989) (emphasis added). In technical amendments to the act several months later, Congress struck "interests of," clarifying that the restriction applies only to a former official who "represents a foreign entity." Pub. L. No. 101-280, § 2(a)(8)(A)(i), 104 Stat. 149, 150 (1990). Although the 1990 Act amended only section 207(f)(1)(A) (the "represents" prong) and not section 207(f)(1)(B) (the "aids or advises" prong)—which did not contain the "interests of" language in the first instance—its deletion of this language confirms that Congress did not intend section 207(f)(1) generally to apply when a former official takes actions that benefit the interests of a foreign entity but does not work on behalf of the foreign entity itself.[3] *See* Summary of H.J. Res. 553, Technical Corrections to the Ethics Reform Act of 1989, 136 Cong. Rec. 7933, 7937 (1990) ("The amendment clarifies that the restrictions in section 207(f) apply to the representation of a foreign entity and not to representation of other parties on an issue in which the foreign entity may be interested."); OGE Letter at 4–5.

---

[3] Our interpretation is consistent with OGE's guidance on the similar restriction in 18 U.S.C. § 207(b) (2000), which prohibits certain former officials from "aid[ing] or advis[ing] any other person" on certain matters for one year following government service. OGE has advised that this restriction prohibits "[o]nly activities that are undertaken on behalf of 'any other person,'" not any activity that provides a benefit to any other person. *Summary of Post-Employment Restrictions* at 7.

Under the interpretation of "aids or advises" we adopt, it is ultimately immaterial that the foreign government shared a common interest with the foreign corporation in the proposed transaction or that it took action to promote that interest. The relevant question under section 207(f)(1) is whether the proposed activities would have been undertaken on behalf of a "foreign entity."[4] Assuming that the foreign corporation was not itself a "foreign entity," and that the former Commerce official's proposed activities would not have been performed on behalf of a foreign government, those activities would not have been prohibited by section 207(f)(1).

## IV.

Finally, your office has asked whether the proposed public relations and media activities of the former Commerce official would constitute "represent[ing]" or "aid[ing] or advis[ing]" the foreign corporation within the meaning of 18 U.S.C. § 207(f)(1). The proposed activities include "writing op-ed pieces and articles about the proposed purchase of [the U.S. company] in major newspapers, magazines, and trade journals; responding to reporters' questions; and otherwise disseminating information through the media in support of the purchase," but would not involve "communicating directly to Members of Congress or officials in the Executive Branch or targeting . . . communications to those persons." Commerce Letter at 7. Although these activities would not constitute representing or advising a foreign entity under section 207(f)(1), we conclude that, if undertaken by a former official with "the intent to influence a decision of any officer or employee of any department or agency of the United States, in carrying out his or her official duties,"[5] 18 U.S.C. § 207(f)(1)(B), they would fall within the prohibition on "aid[ing]" a foreign entity.

---

[4] We note that this rule may encompass a situation in which a former government official knows (or is willfully blind to the fact) that the foreign corporation procuring his services is acting, not in its own interests, but as an agent of the foreign government that owns or controls it. In that situation, although the former official nominally works for the foreign corporation, it would seem that his work would nevertheless be undertaken on behalf of the foreign government. *See* OGE Letter at 4. In such a case, assuming that other elements of the statutory prohibition are present, the engagement may fall within the scope of section 207(f)(1). Because we do not understand the situation your office has described to raise this concern, we do not discuss it further.

[5] Intent may be inferred from circumstantial evidence. *See generally* 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2, at 357 (2d ed. 2003) (explaining that a defendant's state of mind "at [a] particular earlier moment . . . must be gathered from his words (if any) and actions in the light of all the surrounding circumstances. Naturally, what he does and what foreseeably results from his deeds have a bearing on what he may have had in his mind"). Hence, publications and articles that are addressed to members of Congress or Executive Branch officials or, more generally, that urge or discourage government action in some way may be evidence of an intent "to influence a decision" of a government official. *See* 18 U.S.C. § 207(f)(1)(B). Conversely, where a former official's assistance is unrelated to

An official does not "represent[]" an entity "before" any officer or entity of the United States government, under the ordinary meaning of that phrase, by writing and securing publication of op-ed pieces and articles. 18 U.S.C. § 207(f)(1)(A). As OGE has explained, under section 207(f)(1)(A), a former employee "'represents' a foreign entity when he acts as an agent or attorney for or otherwise communicates or makes an appearance on behalf of that entity *to or before* any employee of a department or agency." *Summary of Post-Employment Restrictions* at 11 (emphasis added). As we have explained with respect to another statutory subsection of section 207, a former official does not communicate or make an appearance before an employee of a department or agency when that person publishes an editorial in a newspaper that a government employee reads. *See Applicability of 18 U.S.C. § 207(c) to the Briefing and Arguing of Cases in Which the Department of Justice Represents a Party*, 17 Op. O.L.C. 37, 43 n.6 (1993) (distinguishing the publication of an editorial in a newspaper from filing a brief in court on the ground that the former is not "*to* a specific Department attorney") (emphasis added). Thus, the first prong of section 207(f)(1) does not prohibit the indirect communication that occurs when a government official reads an editorial or article written by a former official.

If undertaken with "the intent to influence a decision of any officer or employee of any department or agency of the United States, in carrying out his or her official duties," however, the proposed activities would fall within the second prong of section 207(f)(1), in our view, because they involve "aid[ing] . . . a foreign entity." 18 U.S.C. § 207(f)(1)(B). Although, as explained above, we construe this prohibition to apply only to services performed on behalf of a foreign entity, the plain meaning of "aid[]" (even with this limitation) is expansive: it means "to give help or support to" someone. *Webster's Third New International Dictionary* 44 (1993). Consistent with this definition, OGE's guidance states that a former employee "aids or advises" a foreign entity "when he assists the entity other than by making . . . a communication or appearance" on behalf of that entity to or before a government body. *Summary of Post-Employment Restrictions* at 11. In other words, a covered former official "aids or advises" a foreign entity under section 207(f)(1)(B) when he engages in any activity that would "give help or support to" a foreign entity with the "intent to influence a decision of" a U.S. government official, other than by providing the kind of assistance covered by section 207(f)(1)(A). Assuming that the requisite statutory intent is present, *see supra* note 5, the public relations and media activities described in the Commerce Letter would have fallen within the scope of this prohibition, because those activities would have plainly "given help or support to" the foreign corporation in its efforts

---

potential government action, as it may be in editorials addressed to shareholders of a public company, his conduct may be evidence that he lacked the requisite statutory intent.

to influence the opinion of the shareholders of the U.S. target company, the public at large, and government officials with regard to its bid for the company.

OGE's written guidance does not take a position on whether section 207(f)(1) covers public relations activities, although it indicates that section 207(f)(1)(B) targets "'behind the scenes' assistance," such as "drafting a proposed communication to an agency, advising on an appearance before a department, or consulting on other strategies designed to persuade departmental or agency decisionmakers to take certain action." *Summary of Post-Employment Restrictions* at 11–12. Were section 207(f)(1)(B)'s prohibition limited to such assistance, at least some portion of the public relations and media activities proposed by the former Commerce official would have fallen outside of section 207(f)(1)(B). Such a limitation cannot, in our judgment, be reconciled with the breadth of the statutory language. A former official acting with the intent to influence a decision of a U.S. government official "aids" a foreign entity by undertaking the public relations and media activities at issue here just as much as he "aids" that foreign entity by providing "behind the scenes" assistance. The statutory language provides no basis for distinguishing between these two activities.

The other post-employment restrictions in section 207, which predate section 207(f)(1) and expressly cover a narrower range of conduct, do not cast doubt on our interpretation of section 207(f)(1). When Congress added section 207(f) to the statute in 1989, it did not use the language of these pre-existing restrictions but, instead, used the broader phrase "aids or advises" to describe the restricted activities. As we have observed before, this difference in language "suggests Congress had particular concern about representation of foreign entities," and correspondingly drafted section 207(f)(1)(B) to impose more expansive restrictions on such representation. *Application of 18 U.S.C. § 207(f) to a Former Senior Employee*, 28 Op. O.L.C. 97, 99 (2004); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972). Accordingly, the narrower scope of other post-employment bars in section 207 provides no justification for reading limitations into section 207(f)(1); rather, section 207(f)(1) must be construed according to its plain terms, which encompass the sort of media-related activities described in your letter, if they are undertaken with the requisite statutory intent.

Lastly, we do not believe that this conclusion raises serious constitutional questions. As an initial matter, we note that section 207(f)(1) prohibits media-related activities on behalf of a foreign entity only incidentally, as part of its broader prohibition on "aiding or advising" foreign entities with the intent to influence a decision of an official or employee of the United States government. That is, the purpose of section 207(f)(1) is not to restrict speech, but to prohibit former senior

government officials from engaging in a range of *conduct* at the behest of foreign entities in their first year after leaving the government. The statute bars speech only insofar as it forms part of the conduct at which the statute is aimed. Although this distinction does not remove a former government official's speech from the protection of the First Amendment, it may serve to distinguish section 207(f)(1) from prohibitions that aim to suppress speech because of its content. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 62, 67–68 (2006) (stating that "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed").[6] As the Supreme Court has explained, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). As explained below, section 207(f)(1)'s prohibition is clearly justified by such an interest.

Even applying heightened constitutional scrutiny, section 207(f)(1)'s application to the media-related activities at issue here would pass muster because the prohibition furthers important government interests unrelated to the suppression of speech, and any incidental restriction on speech is no greater than is necessary to further those interests. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994). Congress's stated purpose in adding subsection (f)(1) to section 207 was "to restore public confidence in the integrity of government officials." Report of the Bipartisan Task Force on Ethics on H.R. 3660, Government Ethics Reform Act of 1989, 135 Cong. Rec. 30,740, 30,740 (1989). The post-employment restriction on working for foreign entities serves this interest in two ways. First, it diminishes the possibility or perception that senior government officials may be influenced in the performance of their duties by the prospect of future employment by foreign entities. Second, it reduces the chance or the perception that senior government officials may benefit improperly from public service by sharing information learned during their time in government with foreign entities in return for remuneration. Taken together, these interests provide a sufficient justification for section 207(f)(1). As courts have recognized, the government has an "undeniably powerful" interest in ensuring that its employees do not "misuse or appear to misuse" the power and influence they gain through government employment, *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 472 (1995), and in

---

[6] *See also Wirzburger v. Galvin*, 412 F.3d 271, 278 (1st Cir. 2005) ("Government actions that are aimed at some goal other than restricting the conveyance of ideas are generally permissible, even if they incidentally inhibit free speech."); *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 295 (2d Cir. 1992) ("States can constitutionally regulate conduct even if such regulation entails an incidental limitation on speech.").

certain circumstances, have held that interest to justify prophylactic limitations that burden even core First Amendment rights. *See Broadrick v. Oklahoma*, 413 U.S. 601 (1973) (upholding prohibition on political activity by state government employees); *Civil Serv. Comm'n v. Letter Carriers*, 413 U.S. 548 (1973) (upholding prohibition on political activity by federal government employees); *United Pub. Workers (C.I.O.) v. Mitchell*, 330 U.S. 75, 102–03 (1947) (same).

Furthermore, the scope and duration of section 207(f)(1)'s prohibition is narrowly targeted to serve the government's interests: It applies only to senior former government officials, and it lasts only for one year following government service. Even during that period, moreover, to fall within section 207(f)(1)'s restriction, the former official must act on behalf of a "foreign entity" *and* speak with the intent to influence a decision of an official or employee of the United States government. So long as a former official is not acting on behalf a foreign entity, section 207(f)(1) does not preclude him from speaking publicly about actions the federal government should take in matters of interest to foreign entities. Accordingly, even subjecting section 207(f)(1) to strict constitutional scrutiny, we think its relatively narrow prohibition is adequately justified by the strong government interest supporting it. We thus conclude that it may be applied to the media activities described above consistent with the Constitution.[7]

JOHN P. ELWOOD
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[7] We note that section 207(f)(2) creates a "[s]pecial rule" that applies the substantive prohibitions of section 207(f)(1) to a lifetime prohibition applicable to former U.S. Trade Representatives and Deputy U.S. Trade Representatives. 18 U.S.C. § 207(f)(2). Whether the longer duration of section 207(f)(2)'s prohibition on "aiding or advising" a foreign entity would raise constitutional questions, or warrant a narrowing construction, when applied to the media-related activities at issue here is beyond the scope of this opinion. *Cf. Constitutionality of Statute Governing Appointment of United States Trade Representative*, 20 Op. O.L.C. 279, 280 (1996) (concluding that 19 U.S.C. § 2171(b)(3), which provides that anyone "who has directly represented, aided or advised a foreign entity . . . in any trade negotiation, or trade dispute, with the United States may not be appointed as United States Trade Representative" is unconstitutional because, among other things, it establishes a qualification that is "'unattainable by a sufficient number to afford [the President] ample room for choice'" in nominations) (quoting *Civil-Service Commission*, 13 Op. Att'y Gen. 516, 525 (1871)).