Cavanagh, J.
(concurring in part, dissenting in part). I concur with the majority that the proper standard of review under the sentencing guidelines is that the trial court’s factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. People v Osantowski, 481 Mich 103, 111; 748 NW2d 799 (2008).
I respectfully dissent from the majority’s interpretation of offense variable (OV) 7, MCL 777.37, however, because I believe that the majority errs by holding that the phrase “conduct designed to substantially increase the fear and anxiety a victim suffered during the offense” must be interpreted without reference to the other three categories under which OV 7 can be scored: sadism, torture, and excessive brutality. In reaching its conclusion, the majority ignores the history of OV 7 and fails to consider not only the entirety of MCL 777.37, but also the statutory scheme of all offense variables, MCL 777.31 et seq. Contrary to the majority position, I would hold that the “conduct designed” category of OV 7 should be interpreted in light of the other three categories within the statute, and thus must be of the same class as sadism, torture, and excessive brutality.
I. SENTENCING GUIDELINES GENERALLY
The current sentencing guidelines, MCL 777.1 et seq., were enacted in 1998. The purpose of the sentenc *450 ing guidelines is to facilitate proportionate sentencing. People v Smith, 482 Mich 292, 305; 754 NW2d 284 (2008). The sentencing guidelines take into account the severity of a criminal offense along with the offender’s criminal history and thereby determine an appropriate proportionate sentencing range. Id. The minimum sentence is scored on grids categorized by the offense class as found in MCL 777.11 et seq. See MCL 777.21. Each grid is comprised of OV score ranges and prior record variable (PRV) level ranges. See MCL 777.61 et seq. The OV score is calculated by adding all the scores of all the applicable OVs. MCL 777.21(a). The upper-most range on each of the several charts is “100+ points,” and, therefore, any OV score of 100 points or above results in the same sentencing guidelines range. Stated differently, once an offender reaches 100 OV points, additional OV points have no direct effect on the length of the offender’s sentence under the statutorily set guidelines.
II. HISTORY OF OV 7
As originally enacted in 1998, MCL 777.37 (OV 7) stated:
(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) A victim was treated with terrorism, sadism, torture, or excessive brutality............................................50 points
(b) No victim was treated with terrorism, sadism, torture, or excessive brutality.....................................0 points
(2) As used in this section:

(a) ‘Terrorism’ means conduct designed to substantially increase the fear and anxiety a victim suffers during the offense.

*451 (b) ‘Sadism’ means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender’s gratification. [Emphasis added.]
In April 2002, MCL 777.37 was amended to its current version to state:
(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ......50 points
(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense......................................................................0 points
(2) Count each person who was placed in danger of injury or loss of life as a victim.
(3) As used in this section, “sadism” means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender’s gratification. [Emphasis added.]
Notably, before the 2002 amendment, the word “terrorism” was defined as “conduct designed to substantially increase the fear and anxiety a victim suffers during the offense” — the exact language of the current “conduct designed” category in the amended version of OV 7. Concurrent with the 2002 amendment to OV 7, a new offense variable was created, OV 20, MCL 777.49a, which directs scoring for an act of terrorism. It is important to recognize that OV 20 incorporates a different definition for “act of terrorism” than that which existed for “terrorism” in the preamendment version of *452 OV 7. Under OV 20, an “act of terrorism” is defined by referring to the definition set forth in the Michigan Anti-Terrorism Act, MCL 750.543b, which was also enacted in 2002.[1]
The enactment of MCL 750.543b, the amendment of OV 7, and the enactment of OV 20 were part of comprehensive changes made by the Legislature in response to the September 11, 2001, attacks. 2002 PA 113, 137; see also, Woodside & Gershel, The USA Patriot Act and Michigan’s Anti-Terrorism Laws: New Anti-Terrorism Laws Make Sweeping Changes, 82 Mich B J 20 (2003) (describing the key components of both Michigan and Federal legislation passed in response to 9/11); 2B Gillespie, Michigan Criminal Law & Procedure (2d ed), § 38A:1, pp 521-528 (summarizing the antiterrorist legislation passed by Michigan in response to 9/11). The changes also reflect a conceptual shift in the meaning of “terrorism.” Young, Defining Terrorism: The Evolution of Terrorism as a Legal Concept in International Law and its Influence on Definitions in Domestic Legislation, 29 BC Int’l & Comp L Rev 23, 30 (2006) (explaining that “terrorism,” traditionally a term of political stigmatization, is evolving into a complex legal term); see also Hardy & Williams, What is “Terrorism”?: Assessing Domestic Legal Definitions, 16 *453 UCLA J Int’l L & Foreign Aff 77, 155 (2011) (explaining that various international bodies have developed their respective definitions of “terrorism”).
III. STATUTORY ANALYSIS OF OV 7
To begin with, I agree with the majority that the phrase “conduct designed” in OV 7 “requires courts to evaluate the intent motivating the defendant’s conduct.” Ante at 440. Indeed, the fact that the “conduct designed” category focuses on a defendant’s intent, whereas sadism, torture, and excessive brutality concern the nature of a defendant’s conduct, is what gives the “conduct designed” category meaning independent of the other three categories in OV 7. Thus, my primary disagreement with the majority lies with its interpretation of the phrase “substantially increase the fear and anxiety a victim suffered during the offense.”
While it is true that our rules of statutory construction dictate that the “conduct designed” category be interpreted as an “independent clause that has an independent meaning,” ante at 441, that rule is not violated by allowing the sadism, torture, and excessive brutality categories to educate our understanding of the conduct designed category. As explained previously, the fact that the conduct designed categories focus on the defendant’s intent ensures that it has meaning independent of the other three categories, which consider the nature of the defendant’s conduct.
Moreover, we have long recognized that “[although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context,” and we have accordingly held that “[i]n seeking meaning, words and clauses will not be divorced from those which precede and those which follow.” G C Timmis & Cov Guardian Alarm Co, *454 468 Mich 416, 421; 662 NW2d 710 (2003) (citation and quotation marks omitted). The importance of this rule in these cases cannot be overstated. If the “conduct designed” language is considered without reference to the other conduct listed in OV 7, the “conduct designed” category could be interpreted to include conduct that differs substantially from sadism, torture, and excessive brutality and thereby permit scoring points under OV 7 on the basis of widely divergent conduct. In my view, this cannot be the proper interpretation of OV 7 because that approach would result in disproportionate sentencing, contrary to one of the principal motivating factors behind the enactment of the legislative sentencing guidelines — where sadism, torture, and excessive brutality all speak of very egregious conduct, the majority’s interpretation of the “conduct designed” category does not require nearly as egregious conduct by a defendant. Therefore, in order for all four categories to have independent meaning while also ensuring that OV 7 does not result in disproportionate sentences, the “conduct designed” category must be interpreted to be of the same class as sadism, torture, and excessive brutality.
The majority argues that this is not the proper interpretation of OV 7 because of the presence of a second “or” in MCL 777.37(1)(a).[2] Specifically, the majority explains that “or” is a word “used to indicate a disunion, a separation, an alternative” and thus interprets the second “or” in MCL 777.37(1)(a) to evidence the Legislature’s intent to “separateü the last OV 7 category from the series that precedes it.” Ante at 441. *455 Yet when considering the historical development of OV 7 already discussed in part II, the majority’s heavy reliance on the second “or” in OV 7 to entirely divorce the “conduct designed” category from the other three categories of conduct listed in OV 7 is even more questionable.
Although I agree with the majority that it is the Legislature’s role to determine “what types of conduct warrant similar scoring under MCL 777.37,” ante at 444 n 38, in my view, the history of OV 7 evidences the Legislature’s intent in crafting the current version of MCL 777.37. As previously explained, the addition of OV 20 was part of Michigan’s antiterrorism efforts. Adding an offense variable dedicated to addressing terrorist activity necessitated the removal of the word “terrorism” in OV 7, which addresses conduct of a wholly different character than OV 20. The Legislature, responding to the shifting legal definition of terrorism, simply replaced the word “terrorism” with what had been the definition of terrorism under the preamendment version of OV 7. The amendment, therefore, was necessary to accommodate changes in the law outside of OV 7 and manifests the Legislature’s intent to maintain OV 7’s preamendment meaning in light of the changing definition of “terrorism” and the addition of OV 20. Accordingly, in my view, the Legislature did not intend to change the meaning of OV 7 and, thus, the prea-mendment version of OV 7 is highly instructive in determining the proper interpretation of the current version of the statute.
Notably, the preamendment version of OV 7 provided a comma-delineated list separated by a single “or,” which even the majority admits should be interpreted to link the categories in a common series. See G C Timmis, 468 Mich at 421-422, (noting that “words grouped in a *456 list should be given related meaning”) (quotation marks and citation omitted), citing Beecham v United States, 511 US 368, 371; 114 S Ct 1669; 128 L Ed 2d 383 (1994) (“That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.”). Terrorism, which was statutorily given the same meaning as the current “conduct designed” category, was included in the aforementioned list with the other three categories, and, thus, it was intended to be given a related meaning. Accordingly, because sadism, torture, and excessive brutality all speak of egregious conduct, I believe that the “conduct designed” category also speaks of similarly egregious conduct. Although I recognize that when amending OV 7 the Legislature inserted an additional “or,” I believe that the addition of the second “or” should be given little weight in this situation. Cf. People v Harrison, 194 Mich 363, 370; 160 NW 623 (1916).[3] Therefore, the “conduct designed” category should be given related meaning to the other three categories in the current version of OV 7.
Additionally, the majority fails to interpret OV 7 in light of the legislative scheme of the sentencing guidelines as a whole. MCL 777.1 et seq. First, conspicuously absent from the majority’s analysis is any consideration of the fact that OV 7 requires the scoring of 50 points on *457 an all-or-nothing basis. Second, I believe that it is relevant that the only other offense variables that have a point value as high as 50 points require either a killing or multiple sexual penetrations during the commission of a crime. See OV 3, MCL 777.33; OV 6, MCL 777.36; OV 9, MCL 777.39; OV 11, MCL 777.41; OV 13, MCL 777.43. Third, none of the other four offense variables that score on an all-or-nothing basis (as opposed to a scale depending on the severity of a defendant’s conduct) are scored similarly to the 50 points assessed for OV 7. In fact, the potential for 50 points under OV 7 is three times higher than any other all-or-nothing offense variable. See, e.g., OV 4, MCL 777.34; OV 5, MCL 777.35; OV 8, MCL 777.38; and OV 14, MCL 777.44. In my view, these aspects of the sentencing guidelines bolster the conclusion that the majority errs in this case.
As previously explained, offense variables are scored in ranges that extend from 0 to 100 points; thus, scoring 50 points under OV 7 alone places a defendant halfway to the maximum possible point total under the offense variables. Accordingly, to maintain the principle of proportionality upon which the sentencing guidelines are based, only particularly heinous conduct should justify scoring points under OV 7, which is evidenced by the fact that the only other conduct that commands such a score is homicide and multiple sexual penetrations. There can be little doubt that sadism, torture, and extreme brutality are heinous acts that the Legislature determined warrant the heavy toll of an all-or-nothing score of 50 points under OV 7. The fact that the first three OV 7 categories require a defendant’s conduct to be extreme, intense, or ruthless[4] comports with *458 the high point value and inflexible nature of OV 7. Therefore, by applying the “conduct designed” category so liberally that it is not of a similar class as sadism, torture, and excessive brutality, the majority’s analysis ignores the statutory language and history of OV 7, and raises grave concerns regarding the proportionality of sentencing, as Justice MCCORMACK notes in her concurring opinion.
On the other hand, the majority reasonably argues that the bar for scoring the “conduct designed” category cannot be so high that the category loses all meaning in comparison to the other categories. Accordingly, the majority’s conclusion that OV 7 requires “conduct that was intended to make a victim’s fear or anxiety greater by a considerable amount,” ante, at 441, appears facially reasonable, given that the phrase “considerable amount” is derived from a dictionary definition of the word “substantially.” However, given the majority’s refusal to consider how the other categories of conduct in OV 7 influence the meaning of the “conduct designed” category, the phrase “considerable amount” is of little assistance because it is rather vague in concept and too broad in application.
Instead, I would hold that the amendatory history of OV 7 evidences a legislative intent that the “conduct designed” category include only conduct that is of the same class as the other three categories of conduct listed in OV 7. Working from that premise, I would further hold that a defendant should only be assessed points under the “conduct designed” category of OV 7 if a preponderance of the evidence shows that the defen *459 dant intended to substantially increase the victim’s fear and anxiety. Finally, I would hold that only conduct that is intended to generate extreme or intense fear and anxiety beyond the fear and anxiety that is necessary to commit the crime at issue satisfies the “substantially increase” language in OV 7 because only extreme or intense fear and anxiety falls within the same class as sadism, torture, and extreme brutality.
IV APPLICATION
A. APPLICATION TO HARDY
In Hardy, defendant first pointed a shotgun at the victim while committing a carjacking. When the victim failed to immediately comply with defendant’s orders, defendant racked the shotgun. Thus, the question is whether racking the shotgun was intended to subject the victim to extreme or intense fear and anxiety.
As the majority explains, to commit a carjacking, a defendant must use (1) “force or violence,” (2) “the threat of force or violence,” or (3) put the victim “in fear.” MCL 750.529a(l). Thus, the crime of carjacking itself entails the use of force, a threat of force, or the installation of fear in the victim. Defendant accomplished this by threatening the victim with violence by pointing the shotgun at the victim and then racking the shotgun.
Although it is true that “merely displaying the weapon or pointing it at the victim would have been enough to issue a threat,” ante at 445, the question is whether the singular act of racking the shotgun was sufficient to instill extreme or intense fear beyond the fear and anxiety that is necessary to commit the carjacking. Admittedly, racking a shotgun is intended to increase the victim’s fear, given that the act gives the *460 impression that the gun is ready to fire. However, I cannot reasonably conclude that a person who is staring down the barrel of a shotgun feels any more comfort than a person who is staring down the barrel of a shotgun that was racked in their presence. Such a view of these situations assumes that the shotgun in the first situation was not racked at some time before the defendant pointed it at the victim. This is not a logical assumption because any person who finds himself or herself on the wrong end of a shotgun is likely to assume that the gun is ready to fire and therefore “fear imminent, violent death,” ante at 445, regardless of whether he or she observed the defendant rack the shotgun.
Accordingly, although racking a shotgun while in the victim’s presence is certainly deplorable conduct, I believe that in the context of a carjacking racking a shotgun is only minimally more fear-inducing than pointing a shotgun at a victim at close range. Therefore, defendant’s conduct was not intended to “substantially increase” the victim’s fear because it was not sufficient to instill extreme or intense fear beyond the fear and anxiety that is necessary to commit the carjacking.[5] Therefore, I would hold that the trial court clearly erred by assessing 50 points under OV 7 in Hardy.
B. APPLICATION TO GLENN
In Glenn, defendant struck both employees on the head with what appeared to be a sawed-off shotgun in *461 the course of committing an armed robbery. When defendant struck the second employee on the head, defendant had already obtained the money and both employees were wholly compliant. Striking the second employee once defendant had already effectuated the crime evidenced that defendant was not merely threatening physical harm, but was in fact willing to physically harm the employees despite their compliance. This additional use of force during the robbery was entirely unnecessary for the crime’s successful commission and was thus intended to “substantially increase” the victims’ fear and anxiety by subjecting them to intense or extreme fear and anxiety beyond what was necessary to commit the offense. Therefore, I agree with the majority that the trial court did not clearly err when assessing 50 points under OV 7 in Glenn.
V. CONCLUSION
I disagree with the majority because it errs by holding that the phrase “conduct designed to substantially increase the fear and anxiety of the victim” must be interpreted independently and without reference to the other three categories under which OV 7 can be scored. In doing so, the majority fails to consider the “conduct designed” category in light of the entirety of the OV 7 statute, the sentencing guidelines statutory scheme, and the history of the OV 7 statute. Instead, I would hold that to be properly scored under OV 7, “conduct designed to substantially increase the fear and anxiety of the victim” must rise to the same class as sadism, torture and excessive brutality, and that the defendant’s conduct must have been intended to cause a victim intense or extreme fear and anxiety beyond the fear and anxiety that is necessary to commit the crime at issue.

 An act of terrorism is defined under MCL 750.543b as follows:
(a) “Act of terrorism” means a willful and deliberate act that is all of the following:
(i) An act that would be a violent felony under the laws of this state, whether or not committed in this state.
(ii) An act that the person knows or has reason to know is dangerous to human life.
(Hi) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

 MCL 777.37(1)(a) states in relevant part: “[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.” Emphasis added.

 Harrison, 194 Mich at 370, held that
“[e]very change of phraseology... does not indicate a change of substance and intent.... A mere change in the words of a revision will not be deemed a change in the law unless it appears that such was the intention. The intent to change the law must be evident and certain; there must be such substantial change as to import such intention, or it must otherwise, be manifest from other guides of interpretation, or the difference of phraseology will not be deemed expressive of a different intention.” [Quoting 2 Lewis Sutherland on Statutory Construction (2d ed), § 401.]

 See MCL 777.37(3), defining “sadism” in part as “conduct that subjects a victim to extreme or prolonged pain .. . (Emphasis added). *458 See also Merriam-Webster’s Collegiate Dictionary (11th ed) (2011), defining “torture” as “the infliction of intense pain... to punish, coerce, or afford sadistic pleasure,” and “brutal” as “grossly ruthless or unfeeling.” (Emphasis added).

 Por an example of conduct that would satisfy the “conduct designed” category under OV 7, consider the conduct in People v Mattoon, 271 Mich App 275, 276-278; 721 NW2d 269 (2006), where the defendant, who was convicted of kidnapping, felonious assault, and possession of a firearm during the commission of a felony, held his girlfriend at gunpoint for over 9 hours, repeatedly threatened to kill her, removed bullets from the gun and told her that they had her name on them, and told her to think about what it would be like when her son came home to yellow tape around the house.